**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ALEXANDER ANDERSON<br><br>Plaintiff,<br><br>- against -<br><br>NEW YORK CITY HEALTH AND HOSPITAL CORPORATION, MIRIAM CARASA individually and as Chief Operation Officer for Lincoln Hospital, ABDUL MONDUL, individually and as Chief Patient Safety Officer for Lincoln Hospital, ATHENA MOTAL, individually and as Executive Director of Social Services, MILLY TORO, individually and as Associate Director of Social Services, NICOLE ROBINSON, individually and as Director of Behavioral Health Department, MARIA KAZAKI-MAHER, individually and as PASA Program Supervisor,<br><br>Defendants. | Case No. 16-CV-01051 (GBD) (KHP)<br><br><br>**SECOND AMENDED COMPLAINT**<br><br>**Jury Trial Demanded** |

ALEXANDER ANDERSON, by and through his undersigned attorneys, hereby files this complaint against Defendants, New York City Health and Hospital Corporation, Miriam Carasa individually and as Chief Operation Officer for Lincoln Hospital, Abdul Mondul, individually and as Chief Patient Safety Officer for Lincoln Hospital, Athena Motal, individually and as Executive Director of Social Services, Milly Toro, individually and as Associate Director of Social Services, Nicole Robinson, individually and as the Director of Behavioral Health Department, Maria Kazaki-Maher, individually and as PASA Program Supervisor, (collectively "Defendants") and states as follows:

## INTRODUCTION

1. This is a civil rights action to vindicate the rights of ALEXANDER ANDERSON to work in an environment free of discrimination based on race, color, gender, age and disability. ALEXANDER ANDERSON is an experienced Social Worker who has committed his professional career to working with the substance abuse population since 1989. Substance abuse includes the use of drugs and alcohol. In 2008, he became a Credentialed Alcohol and Substance Abuse Counselor ("CASAC"). In 2009, he became a Licensed Master Social Worker ("L. M. S. W."). Every career move he has made was designed to allow him to gain more experience and to assume more responsibility with the substance abuse population.

2. Between June 2011 and July 2017 ALEXANDER ANDERSON worked at Lincoln Hospital, which is a part of the New York City Health and Hospital Corporation ("HHC"). He was initially hired to work in the Program to Address Substance Abuse ("PASA"). PASA directly aligned with ALEXANDER ANDERSON's personal passions and professional career progression.

3. ALEXANDER ANDERSON is a 58 year old African-American male. Between 2013 and the present, he applied no fewer than 27 times for promotional or lateral positions inside of HHC. He only received four (4) interviews all within Lincoln Hospital and Defendants always refused to promote him. After being denied the first promotion, ALEXANDER ANDERSON complained to management that the promotions were denied to him due to discrimination based on race and color.

4. Eventually ALEXANDER ANDERSON also complained about discrimination based on age and gender. The people who received the promotions for which he interviewed were

less experienced, younger women.  Some of the people hired had no experience dealing with the substance abuse population.   ALEXANDER ANDERSON was told by management that he just didn't fit in.

5. During the process of interviewing for positions ALEXANDER ANDERSON complained to management and to his union that he was passed over for promotions due to race, color, gender and age.  Management retaliated against him by refusing to either interview or promote him, transferring him away from PASA, forbidding him to work with substance abuse patients, delaying a promised change in title for several months, failing to provide him with supervision that he needed to become a Licensed Clinical Social Worker (LCSW), denying his vacation requests, stripping him of supervisory duties and writing him up for alleged infractions among other things.

6. ANDERSON ALEXANDER suffered from a medical condition and requested a reasonable accommodation.

7. Defendant HHC failed to engage ALEXANDER ANDERSON in the interactive process after he asked for a medical accommodation.

8. ALEXANDER ANDERSON alleges, pursuant to the Title VII of the Civil Rights Act of 1964, 42 USC 20003 et seq. ("Title VII"), and the New York City Human Rights Law, New York City Administrative Code §§8-101 *et seq.* ("NYCHRL") that he is entitled to recover from Defendants all statutory damages including compensatory damages, mental anguish, punitive damages, reasonable attorneys' fees and costs.

## JURISDICTION AND VENUE

9.  This Court has jurisdiction over this controversy pursuant to 28 U.S.C. § 1331, § 1343 and 42 U.S.C. §2000e et. seq., 42 U.S.C. §1983 and has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. §1367.

10. Venue is proper in the Southern District pursuant to 28 U.S.C. §1391.

## PARTIES

11. ALEXANDER ANDERSON is a resident of the County of the Bronx and a former employee of Lincoln Hospital in the Bronx.

12. DEFENDANT NEW YORK CITY HEALTH AND HOSPITALS CORPORATION ("HHC") is a public corporation created under the laws of the State of New York

13. HHC operates Lincoln Hospital.

14. Defendant Miriam Carasa ("Carasa") is a natural person and Chief Operation Officer of Lincoln Hospital for the relevant time period in this complaint.

15. Defendant Abdul Mondul ("Mondul") is a natural person and Chief Patient Safety Officer of Lincoln Hospital for the relevant time period in this complaint.

16. Defendant Athena Motal ("Motal") is a natural person and Executive Director of Social Services of Lincoln Hospital for the relevant time period in this complaint.

17. Defendant Milly Toro ("Toro") is a natural person and Associate Director of Social Services of Lincoln Hospital for the relevant time period in this complaint.

18. Defendant Nicole Robinson ("Robinson") is a natural person and Director of Behavioral Health Department of Lincoln Hospital for the relevant time period in this complaint.

19. Defendant Maria Kazaki-Maher ("Kazaki") is a natural person and PASA Program Supervisor of Lincoln Hospital for the relevant time period in this complaint.

20. At all relevant times, Defendants were employers under the relevant statutes.

21. At all relevant times, ALEXANDER ANDERSON was an employee under the relevant statutes.

22. The EEOC issued a right to sue letter on December 16, 2015 and the complaint was timely filed within 90 days on February 11, 2016.

## STATEMENT OF FACTS

23. ALEXANDER ANDERSON appears to be and is an African-American male.

24. ALEXANDER ANDERSON was born on February 6, 1959.

### ALEXANDER ANDERSON's Professional Passion is Helping Substance Abusers

25. ALEXANDER ANDERSON has worked professionally with the substance abuse population since 1989.

26. Substance abuse includes the excessive use of alcohol, prescription drugs and illegal drugs.

27. Dealing with substance abusers is a specialty within the field of social work and medicine.

28. Dealing with substance abuse issues is deeply personal to ALEXANDER ANDERSON.

29. ALEXANDER ANDERSON made a decision that he would be part of the solution to this problem instead of being a passive observer.

30. From 1989 until 2008 ALEXANDER ANDERSON worked as a case worker for several nonprofit organizations.

31. During that time period, ALEXANDER ANDERSON identified and treated substance abusers.

32. From 2008 until 2011 ALEXANDER ANDERSON worked as a Social Worker who specialized in treating substance abusers.

33. Between 1989 and 2011 ALEXANDER ANDERSON directly supervised case workers.

**ALEXANDER ANDERSON'S Education and Credentials**

34. ALEXANDER ANDERSON earned his Bachelor of Arts from Syracuse University in 1985.

35. ALEXANDER ANDERSON earned his Social Work Master Degree from Hunter College in 2008.

36. By 2008, ALEXANDER ANDERSON became a Credentialed Alcohol and Substance Abuse Counselor ("CASAC").

37. The New York State Office of Alcoholism and Substance Abuse Services ("OASAS") oversees CASAC certification.

38. A CASAC Counselor is specifically trained to provide competent, ethical, direct care in alcoholism and substance abuse programs and skilled in meeting the needs of today's society.

39. Becoming a CASAC certified counselor is a rigorous process which includes:

    a.  Working 6,000 hours in a substance abuse program as a counselor or supervisor;

    b.  Performing the following professional tasks: diagnostic assessment; evaluation; intervention; referral; and alcoholism and/or substance abuse counseling in both individual and group settings;

    c.  Having an on-site documented clinical supervision by a qualified health professional at least once per week;

d.  Being integrated with the alcoholism and/or substance abuse services delivery system for consultation and referrals;

e.  Practicing in alcoholism and/or substance abuse counseling in order to establish and maintain recovery and prevent relapse; and

f.  Obtaining a minimum of 300 hours of Supervised Practical Training in 12 Core Functions (areas of professional expertise) that have been performed for a minimum of 10 hours, under the direct supervision of a qualified health professional.

40. In 2009, ALEXANDER ANDERSON became a New York State Licensed Master Social Worker ("LMSW").

41. To be licensed as a Licensed Master Social Worker (LMSW) in New York State one must:

a.  Be of good moral character as determined by the Department;

b.  Be at least 21 years of age;

c.  Have received a master's degree in social work;

d.  Meet examination requirements; and

e.  Complete coursework or training in the identification and reporting of child abuse offered by a New York State approved provider.

42. Currently, ALEXANDER ANDERSON has completed all of the requirements to become a Licensed Clinical Social Worker ("LCSW") with the exception of meeting the examination requirement.

**Defendant HHC Job Structure for Social Workers**

43. There are five levels of Social Workers at Lincoln Hospital.

44. The lowest levels are Social Workers consisting of two levels: Social Worker Level I and Social Worker Level II (Collectively "Social Worker").

45. The highest level of unionized Social Workers is the Social Worker Supervisors, which consists of Level III, Level IV and Level V (collectively "Social Work Supervisor").

46. A LMSW and LCSW could work as either a Social Worker or Social Worker Supervisor with Defendant HHC.

47. Employees of Defendant HHC have been promoted from Social Worker Level I directly to being a Social Worker Supervisor III or Social Worker Supervisor IV.

48. Defendant Motal, Defendant Carasa, Defendant Toro and Defendant Robinson approved the promotion or transfer of social workers in Lincoln Hospital.

## ALEXANDER ANDERSON Hired to Work in the PASA Program

49. Defendant HHC operates Lincoln Hospital as a Hospital facility at 234 E. 149th Street Bronx, NY 10451.

50. By 2011, Defendant Mondul implemented the Program to Address Substance Abuse, dependence and withdrawal ("PASA") at Lincoln Hospital.

51. PASA is a program which specifically addresses medical and social needs of the substance abuse community.

52. Working with PASA allowed ALEXANDER ANDERSON to expand his experience by servicing substance abusers in a hospital.

53. In 2011, ALEXANDER ANDERSON was interviewed to work as a Social Worker in PASA at Lincoln Hospital by Defendant Mondul, Christina Laboy, the Associate Director of Social Services and Helen Esanbor, a Social Worker Supervisor Level V.

54. On August 2, 2011, ALEXANDER ANDERSON was hired by Defendant HHC to work as a Social Worker Level I in the Social Services Department of Lincoln Hospital.

55. On August 29, 2011, ALEXANDER ANDERSON began working as a PASA Social Worker.

56. Defendant Mondul had the ability to control job assignments and promotional opportunities for ALEXANDER ANDERSON.

57. Defendant Mondul also assigned ALEXANDER ANDERSON to supervise Mr. Dwayne Murray, a PASA CASAC Counselor.

58. ALEXANDER ANDERSON's direct supervisor was Ms. Esanbor.

59. Defendant Mondul removed Ms. Esanbor as the PASA Program Supervisor, because she did not have the required CASAC certificate and experience.

60. Ms. Laboy had a CASAC certification, so she supervised ALEXANDER ANDERSON and Mr. Murray.

61. In January 2012, Ms. Laboy was promoted to the position of Director of Lincoln Recovery.

62. ALEXANDER ANDERSON asked to become the PASA Program Supervisor, but Defendant Mondul rejected his request.

63. Upon information and belief, Ms. Esanbor returned to the position as PASA Program Supervisor position with the condition that she obtain a CASAC certificate as a requirement to remain as the PASA Program Supervisor.

64. In August 2012, Defendant Mondul hired Ms. Anette Burwell as a PASA Addiction Counselor.

65. Defendant Mondul assigned ALEXANDER ANDERSON to supervise Ms. Burwell.

66. In September 2012, Defendant Mondul hired Mr. Alex Aleman as a PASA Addiction Counselor.

67. Defendant Mondul assigned ALEXANDER ANDERSON to supervise Mr. Aleman.

68. In June 2013, Defendant Mondul hired Dr. Judith Branche as the PASA Medical Director.

69. Dr. Branche has an American Board Addition Medicine certification.

70. In March 2014, Defendant Mondul and Defendant Motal hired Ms. Lea Kobayashi-Moore for the PASA Social Worker/Addiction Counselor Supervisor position.

71. Ms. Moore is a younger Asian female Social Worker (LMSW/CASAC).

**ALEXANDER ANDERSON Offered a Supervisory Position at Lincoln**

72. In November 2013, Ms. Laboy interviewed and offered ALEXANDER ANDERSON a Social Worker Level I position at Lincoln Recovery.

73. The Social Worker Level I position would have required ALEXANDER ANDERSON to use his CASAC credentials, supervise the staff and reorganize the program. ALEXANDER ANDERSON informed Defendant Mondul and Dr. Branche that he had accepted Ms. Laboy's offer since it offered more significant managerial responsibilities which would advance ALEXANDER ANDERSON's addiction treatment career.

74. The position also paid $53,000.00 per year, thus being an increase of $4,000.00 per year.

75. Defendant Mondul and Dr. Branche then offered ALEXANDER ANDERSON a Social Worker II position to remain on the PASA team.

76. This offer would result in a nearly $11,000.00 per year pay increase.

77. Defendant Mondul also stated to ALEXANDER ANDERSON that Lincoln Recovery was slated to be closed; therefore, it was better for him to remain on the PASA team.

78. ALEXANDER ANDERSON stayed with PASA.

79. ALEXANDER ANDERSON never again was accepted into any other Social Worker of Social Worker Supervisor position of his choosing with DEFENDANT HHC.

**Lincoln Hospital did Terminate, Failed to Retain and Failed to Hire African-American Male Social Worker**

80. ALEXANDER ANDERSON observed the termination and failure to hire or retain African American social workers

81. During ALEXANDER ANDERSON'S employment he was one of the four (4) African-American male social workers.

82. ALEXANDER ANDERSON observed Defendant Motal terminate two male African-American employees.

83. ALEXANDER ANDERSON observed one African American male resign after being denied multiple promotions.

84. ALEXANDER ANDERSON is aware of two African-American male social workers who were not hired by Defendant Lincoln. These two men were qualified to work as social workers with Defendant H.H.C.

**Defendant Motal, Defendant Toro and Defendant Mondul Refused to Promote Alexander Anderson to a Social Worker Supervising Position for the First Time.**

85. On December 11, 2013, Defendant Motal informed ALEXANDER ANDERSON, Ms. Burwell, Ms. Esanbor, and Mr. Aleman that Ms. Esanbor was no longer the PASA Program Supervisor.

86. Ms. Esanbor was reassigned to supervise Social Workers in the Emergency Department.

87. ALEXANDER ANDERSON again asked Defendant Motal and Defendant Mondul to be promoted to the PASA Program Supervisor position.

88. ALEXANDER ANDERSON had the qualifications to be the PASA supervisor.

89. ALEXANDER ANDERSON had the experience to be the PASA supervisor.

90. On December 13, 2013, Defendant Motal met with ALEXANDER ANDERSON, Ms. Esanbor and Ms. Burwell and stated that she had appointed Defendant Maher to replace Ms. Esanbor as the PASA Program Supervisor.

91. Defendant Maher is a white female social worker, who is an LCSW.

92. ALEXANDER ANDERSON told Defendant Motal that she had discriminated against him because he is African-American.

93. After the meeting, ALEXANDER ANDERSON stated to Dr. Branche that he requested to fill the vacated PASA Program Supervisor position, but Defendant Motal had discriminated against him by appointing Defendant Maher.

94. ALEXANDER ANDERSON stated to Dr. Branche that Defendant Maher did not have the qualifications that were required by Defendant Mondul and Human Resources for other team members to be hired.

95. Dr. Branche informed ALEXANDER ANDERSON that she had also met with Defendant Maher who did not possess addiction treatment qualifications.

96. Dr. Branche stated that she would discuss the situation with Defendant Mondul and Defendant Motal.

97. On December 16, 2013, ALEXANDER ANDERSON met with Dr. Branche and Ms. Burwell.

98. Upon information and belief, Defendant Mondul said that ALEXANDER ANDERSON should be the PASA Program Supervisor, but that ALEXANDER ANDERSON does not fit in.

99. On December 23, 2013, Defendant Motal agreed to make ALEXANDER ANDERSON a Social Worker Level II, after conferring with Defendant Mondul and Dr. Branche.

100. During the meeting ALEXANDER ANDERSON repeated to Defendant Motal that she discriminated against him because she didn't promote him to the position of PASA Program Supervisor.

101. Defendant Motal stated to ALEXANDER ANDERSON that she had signed his outstanding job evaluation, which should help him feel better.

102. On January 7, 2014, ALEXANDER ANDERSON met with Defendant Maher for their first supervisory session.

103. Defendant Maher is at least 20 years younger than ALEXANDER ANDERSON.

104. Defendant Maher stated that she had no experience in the field of addiction treatment and requested that ALEXANDER ANDERSON continue to supervise the counselors.

105. Defendant Maher was not CASAC certified: a pre-requisite to be the PASA Program Supervisor.

106. Defendant Maher was a Social Worker Level I who was promoted directly into a Social Worker Supervisor IV position at Lincoln Hospital

107.  ALEXANDER ANDERSON was a better candidate than Defendant Maher in that she lacked the following qualifications which he possessed:

    a.  CASAC certification, a requirement for the position,

    b.  Experience supervising addiction counselors and social workers,

    c.  Experience utilizing addiction treatment modalities as required by the National Association of Social Workers ("NASW"); and

    d.  The ability to comply with a NASW Standards for Social Work Practice with Clients with Substance Use Disorders directive –That "Social workers shall also be knowledgeable about current evidence informed approaches and best practices for service provision to clients with substance use disorders. Social workers shall actively seek to remain current with specialized training, as appropriate."

**Defendant HHC, Defendant Mondul and Defendant Robinson Refused to Promote ALEXANDER ANDERSON to a Social Worker Supervisory Position for the Second Time**

108. On January 23, 2014, ALEXANDER ANDERSON was interviewed by Ms. Lily Hill, Director of the Psychiatric Mobile Crisis Unit ("MCU") for the Social Worker Supervisor III position.

109. Ms. Hill commented on ALEXANDER ANDERSON's experience as a Social Worker and addiction counselor supervisor in the PASA program.

110.  ALEXANDER ANDERSON stated during the interview that he wanted to leave PASA, because Defendant Mondul and Defendant Motal refused to promote him to the PASA Program Supervisor position because he is an African-American male.

111. In March 2014, Defendant Motal and Defendant Robinson, Director of Behavioral Health Department, hired Ms. Jessica Erickson as the MCU Social Worker Supervisor Level III.

112. Ms. Erickson is approximately 25 years younger than ALEXANDER ANDERSON.

ALEXANDER ANDERSON was better candidate than Ms. Erickson in that she worked the following qualifications which he possessed. a. Experience as a social worker. Ms. Erickson barely had one year's worth of experience as an LMSW. compared to his nearly six years at the time; and

b. Permanent employee status. Lincoln rarely hires temporary employees for positions where qualified Lincoln employees also apply.

**Defendant Motal and Defendant Robinson Refused to Promote ALEXANDER ANDERSON to a Social Worker Supervisory Position for the Third Time.**

113. On May 8, 2014, Defendant Motal and Defendant Robinson interviewed ALEXANDER ANDERSON for the position of Addiction Counselor Supervisor for the Mentally Ill Chemical Abuse (MICA) program, in the psychiatric unit 10A.

114. During the interview, Defendant Motal stated to ALEXANDER ANDERSON in sum and substance IS THERE ANYTHING YOU REGRET?

115. ALEXANDER ANDERSON stated that he regretted having a disagreement with Defendant Toro and Defendant Maher, after Defendant Toro removed PASA counselor addiction Alex Aleman as a direct report to Plaintiff.

116.  ALEXANDER ANDERSON asserted that Defendant Toro was wrong for accusing him of threatening and harassing Mr. Aleman.

117.  ALEXANDER ANDERSON also stated to Defendant Motal that she should consider hiring him as the MICA Supervisor because she had discriminated against him and other African-American males by not hiring African-American males as supervisors in her department.

118.  In June 2014, Defendant Motal hired Ms. Ilana Horowitz for the MICA Addiction Counselor Supervisor position a Level III position.

119. Ms. Horowitz is a younger white female social worker.

120.  ALEXANDER ANDERSON was a better candidate than Ms. Horowitz in that she lacked qualifications which he possessed:

    a.   Supervisory experience; and

    b.   CASAC certification.

**Defendant Robinson Refused to Promote ALEXANDER ANDERSON to a Social Worker Supervisory Position for the Fourth Time**

121. On February 12, 2015, ALEXANDER ANDERSON sent an e-mail to Defendant Robinson requesting to fill the available position as an Addiction Counselor Supervisor in the MICA program, in the psychiatric unit 10C.

122. Defendant Robinson stated to ALEXANDER ANDERSON in sum and substance "THAT'S NOT POSSIBLE FOR YOU; THE POSITION IS NOT AVAILABLE TO YOU AND THAT'S FINAL."

123. In March 2015, Defendant Robinson hired Ms. Enid Jones-Burton as the MICA Addiction Counselor Supervisor for the psychiatric unit 10C.

124. Ms. Burton is a younger African-American female Social Worker (LMSW) approximately 25 years younger than ALEXANDER ANDERSON and is not CASAC certified.

125. ALEXANDER ANDERSON was a better candidate than Ms. Burton in that she lacked qualifications which he possessed:

        a. CASAC certification.

**Defendant Toro and Defendant HHC Refused to Promote Alexander Anderson to a Social Worker Supervisory Position for the Fifth Time**

126. In or about November 2016, ALEXANDER ANDERSON interviewed for an open supervisory position with Dr. Sandra Scott for a program known as Screening, Brief Intervention and Referral to Treatment ("SBIRT").

127. SBIRT is similar to the PASA program in that it focuses on primarily on providing services to substance abuser.

128. After the interview, Dr. Scott informed ALEXANDER ANDERSON that she wanted him to work in the SBIRT program in a supervisory position.

129. Dr. Scott directed ALEXANDER ANDERSON to interview with her supervisor, Maria Holnes-Flemming, the Administrator of the Emergency Room.

130. Holnes-Flemming, informed ALEXANDER ANDERSON that she wanted him to work in the SBIRT program in a supervisory position.

131. Holnes-Flemming informed ALEXANDER ANDERSON that she needed to speak with human resources in order to promote ALEXANDER ANDERSON.

132. A transfer and promotion like this would have to be approved by Defendant Toro.

133. After a period of time, ALEXANDER ANDERSON left messages for Holnes-Flemming and Dr. Scott to inquire about the status of position.

134. Holnes-Flemming and Dr. Scott never communicated with ALEXANDER ANDERSON again.

135. ALEXANDER ANDERSON was not hired as an SBIRT supervisor.

136. Upon information and belief all subsequent interviews for the SBIRT supervisory position contained Defendant Toro as an interviewer.

137. Upon information and belief, Yasmine Cosme, a woman approximately 20 years younger than ALEXANDER ANDERSON was hired.

138. Upon information and belief, Yasmine Cosme is not a Social Worker and has no supervisory experience.


**ALEXANDER ANDERSON is Disciplined Based on Defendants' False Accusations**

139. On March 27, 2014, ALEXANDER ANDERSON e-mailed a complaint concerning Mr. Aleman's improper quality of patient care activities, to Defendant Mondul, Dr. Branche, Defendant Maher and Defendant Toro. A copy of the e-mail is attached as **Exhibit A.**

140. On March 28, 2014, Defendant Maher called ALEXANDER ANDERSON to a meeting with   Defendant Toro.

141. During the meeting, Defendant Toro stated to Alexander Anderson that his e-mail dated March 27, 2014 was a direct threat to Mr. Aleman.

142. Defendant Maher stated that Mr. Aleman requested to leave work early because he felt threatened and harassed by ALEXANDER ANDERSON.

143.  Defendant Toro also stated that Mr. Aleman filed a harassment complaint against ALEXANDER ANDERSON with Human Resources.

144. ALEXANDER ANDERSON stated to Defendant Toro and Defendant Maher that the e-mail was not a threat or harassment, but a complaint about Mr. Aleman's improper treatment of a patient.

145. ALEXANDER ANDERSON also handed Defendant Toro the HHC patient safety policy called Failure to Escalate, which the PASA team received from Defendant Mondul on February 25, 2014 and read the relevant sections that supported his actions.

146.  Defendant Toro stated to ALEXANDER ANDERSON in sum and substance I'M ORDERING YOU TO STOP REPORTING MR. ALEMAN'S WORK.

147. ALEXANDER ANDERSON stated to Defendant Toro that Defendant Mondul had assigned him to supervise Mr. Aleman.

148. Defendant Toro stated that THE COUNSELORS WILL REPORT DIRECTLY TO DEFENDANT MAHER FOR SUPERVISION; YOUR CHANGE IN TITLE TO A SOCIAL WORKER LEVERL II IS CANCELLED.

149.  Immediately after the above meeting, ALEXANDER ANDERSON met with Defendant Mondul in his office.

150.  ALEXANDER ANDERSON informed Defendant Mondul that Defendant Toro and Defendant Maher had discharged him as the PASA CASAC counselor supervisor.

151.  ALEXANDER ANDERSON said that Defendant Maher and Defendant Toro falsely accused him of threatening and harassing Mr. Aleman in an e-mail.

152. Defendant Mondul stated that he had read the e-mail and didn't consider it a threat to Mr. Aleman.

153. Defendant Mondul also stated that he would discuss the situation with Defendant Toro and Defendant Maher.

154. ALEXANDER ANDERSON also met with Dr. Branche and Ms. Burwell and informed them that he was discharged as the addiction counselor supervisor by Defendant Toro because of false accusations that he threatened and harassed Mr. Aleman in an e-mail.

155. Dr. Branche stated to ALEXANDER ANDERSON that she had read the e-mail and didn't consider it a threat to Mr. Aleman.

156. Ms. Burwell also stated to ALEXANDER ANDERSON in sum and substance THAT'S WHY I TOLD YOU TO TAKE THE PATIENT SAFETY POLICY WITH YOU TO THAT MEETING, BECAUSE THEY DON'T LIKE THE FACT THAT YOU'VE BEEN COMPLAINING ABOUT DISCRIMINATION.

157. On April 14, 2014, ALEXANDER ANDERSON wrote an e-mail to Dr. Melissa Schori, former Chief Medical Director of Lincoln Hospital, in which he complained about being discharged as the PASA Addiction Counselor Supervisor.

158. Dr. Schori replied that she would discuss the situation with Defendant Mondul.

159. In April 2014, Mr. Joseph, (and East Indian social worker supervisor III), emailed a complaint regarding Mr. Aleman's conduct to Defendant Toro and Defendant Mondul among others.

160. Joseph wrote that Aleman engaged in abusive, threatening and aggressive behavior towards a nurse.

161. Mr. Joseph was not discipline by Defendant Toro for sending the E-mail.

162. Mr. Joseph supervised the PASA addition counselors during the evening.

**Retaliation: Defendant Carasa, Defendant Motal, Defendant Toro and Defendant Maher Rescinded ALEXANDER ANDERSON'S  Social Worker Level II Promotion.**

163. On July 25, 2014 Ms. Yvette Villanueva, Executive Director of Human Resources, informed ALEXANDER ANDERSON that Defendant Motal had cancelled his appointment to Social Worker II.

164. Later that day, ALEXANDER ANDERSON visited Defendant Motal in her office.

165.  Defendant Motal refused to explain to ALEXANDER ANDERSON why his change in title had been cancelled.

166. On July 28, 2014, Defendant Motal, Defendant Toro, Defendant Maher and ALEXANDER ANDERSON met and informed him that his appointment was denied due to the allegations that he threatened Mr. Aleman.

167. Defendant Motal presented the same e-mail that Defendant Toro and Defendant Maher presented regarding Mr. Aleman.

168. Defendant Motal stated in sum and substance UNFORTUNATELY BECAUSE OF THIS E-MAIL I'M DENYING YOUR APPOINTMENT, BUT YOU CAN TRY AGAIN IN THE FUTURE; UNFORTUNATELY FOR YOU, MY BOSS AGREES WITH ME.

169. Defendant Motal's boss is Defendant Carasa.

170. Defendant Motal refused to provide ALEXANDER ANDERSON with her written decision.

171. ALEXANDER ANDERSON stated in sum and substance YOU ARE DISCRIMINATING AGAINST ME.

## ALEXANDER ANDERSON Publicly Complains about Discrimination and Retaliation to his Labor Union

172. On August 7, 2014, ALEXANDER ANDERSON attended a meeting that was organized by DC 37 union representatives to discuss social workers' complaints against the Department of Social Service's management.

173. During the meeting, ALEXANDER ANDERSON informed the panel that he was removed as a supervisor and denied a change in title because he reported an employee's improper quality of patient care activities.

174. ALEXANDER ANDERSON stated that he was retaliated against for stating he a was victim of discrimination by Defendant HHC management.

175.  Defendant Toro publicly stated to the panel that ALEXANDER ANDERSON was disciplined because he threatened an employee in an e-mail.

176.  On August 11, 2014 ALEXANDER ANDERSON filed a grievance, with a copy of the e-mail in question attached, against Defendant Motal for cancelling his change in title.

177. The grievance stated among other things that Defendant Motal denied him his change in title, because he is an African-American male.

178. A copy of the complaint was given to his Union and David Nadal, Director of Labor Relations.

179. After reading the grievance and email, Nadal and a union representative stated the email was not a threat.

180. On August 25, 2014, ALEXANDER ANDERSON e-mailed a grievance against Defendant Motal, Defendant Toro and Defendant Maher to Mr. William Marshall, EEO Officer at Lincoln Hospital, for violating his rights as a whistleblower.

**Defendant Maher Refused to Meet with ALEXANDER ANDERSON for Clinical Supervision Needed for him to become a LCSW, yet Defendant Maher Met with Others**

181. Defendant Maher was supposed to meet with ALEXANDER ANDERSON monthly to provide the supervision he needed to complete his hours and become an LCSW.

182. From March 2014 until September 2014, Maher refused to meet with ALEXANDER ANDERSON and endorse his LCSW application.

183. Defendant Maher stated to ALEXANDER ANDERSON that she was too busy to meet with him and endorse his LCSW application.

184. ALEXANDER ANDERSON was informed by his co-worker, Ms. Moore that Defendant Maher had met with her and endorsed her LCSW application during the relevant time period.

185. ALEXANDER ANDERSON needed Defendant Maher's endorsement so that he could complete a requirement needed to become a LCSW.

**ALEXANDER ANDERSON Complained to Lincoln Senior Management about Discrimination and Retaliation**

186. On September 12, 2014, ALEXANDER ANDERSON e-mailed Mr. Milton Nunez (Executive Director of Lincoln Hospital), Defendant Carasa, Defendant Mondul, Mr. Nadal and Mr. Marshall stating that Defendant Maher's refusal to meet with him for supervision and endorse his LCSW application was discriminatory.

187. ALEXANDER ANDERSON stated that he planned to file a complaint with the EEOC.

188. On September 19, 2014, Defendant Carasa met with ALEXANDER ANDERSON in her office to discuss his complaints.  Defendant Carasa stated in sum and substance:

    e.   THE MARCH 27TH E-MAIL TO MR. ALEMAN WASN'T A THREAT;

    f.   YOU SHOULD BE THE SUPERVISOR BECAUSE MARIA DOESN'T KNOW WHAT SHE IS DOING;

    g.   MR. ALEMAN SHOULD HAVE BEEN FIRED FOR INSUBORDINATION;

    h.   DEFENDANT MAHER WILL MEET WITH ALEXANDER ANDERSON IMMEDIATELY FOR SUPERVISION AND ENDORSE HIS LCSW. APPLICATION; and

    i.   I WILL ENSURE YOU BECOME A SOCIAL WORKER LEVEL II.

189. On October 1, 2014, ALEXANDER ANDERSON sent an e-mail to Defendant Carasa requesting that she further investigate Defendant Motal for discriminating against him and other African-American males.

190. On October 3, 2014, Defendant Carasa called ALEXANDER ANDERSON for a meeting in her office, concerning his complaints against Defendant Motal, Defendant Toro and Defendant Maher. Defendant Carasa stated in sum and substance that:

    a.   I AM STILL INVESTIGATING SOME OF YOUR COMPLAINTS;

    b.   YOU WILL BE RESTORED AS THE PASA ADDICTION COUNSELOR SUPERVISOR IMMEDIATELY AFTER YOU RECEIVE YOUR CHANGE IN TITLE TO SOCIAL WORKER II; and

    c.   YOU CANNOT BE PROMOTED TO A SOCIAL WORK SUPERVISOR III POSITION BECAUSE YOU ARE NOT AN LCSW.

Amended Complaint-2nd-Anderson        24

191. Later, ALEXANDER ANDERSON complained to Mr. Williams, Executive Vice President of HHC/EEO, concerning Defendant Carasa's actions of refusing to remedy the discrimination he faced.

192. Mr. Williams replied to ALEXANDER ANDERSON that IF I WERE YOU, I WOULD STOP WRITING E-MAILS, BECAUSE YOU CAN GET INTO A LOT OF TROUBLE; YOU SHOULDN'T QUOTE LAWS, BECAUSE YOU'RE NOT A LAWYER.

193. On November 7, 2014, ALEXANDER ANDERSON received his long-awaited job title change to Social Worker Level II.

194. Social Workers who move from Level I to a Level II get back pay for time the spent waiting for the change in title.

195. Additionally, it should take approximately one month for someone to go from being a Social Worker Level I to Social Worker Level II.

196. ALEXANDER ANDERSON only received back pay from approximately October 2014 to November 7, 2014.

197. ALEXANDER ANDERSON is entitled to back pay from November 2013 until November 2014 which represents the time he waited to get promoted.

**Defendant Maher Failed to Approve ALEXANDER ANDERSON's Vacation**

198. On November 26, 2014, ALEXANDER ANDERSON submitted his request for vacation leave for December 26, 2014-January 2, 2015 to Defendant Maher.

199. Defendant Maher denied ALEXANDER ANDERSON's request stating that Mr. Aleman had submitted his request for the same dates before ALEXANDER ANDERSON.

200. ALEXANDER ANDERSON spoke with Mr. Aleman who stated he had not requested December 26th as a vacation day.

201. ALEXANDER ANDERSON confronted Defendant Maher with that information.

202. She stated in sum and substance YOU CAN STOP ASKING BECAUSE I'M NOT GOING TO APPROVE YOUR VACATION REQUEST.

203. On December 2, 2014, ALEXANDER ANDERSON e-mailed his complaint to Mr. Marshall and Ms. Jeanette Jimenez (EEOC Investigator) regarding Defendant Maher's refusal to approve his vacation request.

204. ALEXANDER ANDERSON stated that Defendant Maher's actions were retaliatory because he complained about her discriminatory actions.

205. On December 11, 2014, Ms. Burwell informed ALEXANDER ANDERSON that Defendant Maher had approved her vacation request for December 26, 2014—the same date ALEXANDER ANDERSON requested, but twelve days later.

206. On December 18, 2014, Mr. Marshall e-mailed ALEXANDER ANDERSON his decision that Maher's actions were business related and non-retaliatory, because other employees requested the same dates prior to ALEXANDER ANDERSON.

207. Mr. Marshall did not contact Ms. Burwell as part of his alleged investigation.

**Defendant Robinson and Mr. Nadal Informed ALEXANDER ANDERSON that he is Being Transferred Away from PASA.**

208. On February 19, 2015, ALEXANDER ANDERSON was called to a meeting with Defendant Robinson and Charles Johnson, a labor relations manager, in the Human Resources office.

209. During the meeting, Defendant Robinson informed ALEXANDER ANDERSON that he was being involuntarily transferred to the psychiatric unit 10C as a Social Worker Level II.

210. ALEXANDER ANDERSON stated to Defendant Robinson that she was retaliating against him because of his complaints of management's discriminatory actions.

211. ALEXANDER ANDERSON filed a grievance opposing the transfer, based on Mr. Nadal's and Defendant Robinson's violation of the Collective Bargaining Agreement and HHC's anti-retaliation policy.

**ALEXANDER ANDERSON Denied Opportunity to Work with Substance Abusers**

212. On March 6, 2015, ALEXANDER ANDERSON was transferred into psychiatric unit 10C.

213. Ms. Esanbor was ALEXANDER ANDERSON's direct supervisor.

214. During orientation, Ms. Esanbor stated to ALEXANDER ANDERSON in sum and substance YOU WERE MOVED FROM PASA TO 10C BECAUSE YOU'RE A TROUBLE MAKER; MANAGEMENT CONSIDERS YOU TO BE A TROUBLE MAKER.

215. The transfer to unit10C undermined ALEXANDER ANDERSON's professional focus on substance abuse.

216. Until July 27, 2016 ALEXANDER ANDERSON was not allowed to perform any duties related to substance abuse patients in Unit 10C.

217. ALEXANDER ANDERSON only performed duties related to substance abuse patients, when the Social Worker who performed those duties was on maternity leave.

218. ALEXANDER ANDERSON was only allowed to coordinate housing referrals, shelter referrals and interact with outpatient mental health programs.

219. The transfer harmed ALEXANDER ANDERSON's professional development as a substance abuse social worker.

220. The transfer to unit 10C was retaliatory for his complaints of discrimination.

**ALEXANDER ANDERSON Time and Attendance**

221. On June 10, 2015, ALEXANDER ANDERSON observed that Rovena Juman (Social Worker Supervisor Level V) possessed a document that listed his name with other employees who were identified as being excessively absent and were slated for disciplinary action.

222. Later, Defendant Robinson informed ALEXANDER ANDERSON that the document came from Milton Nunez, Executive Director of Lincoln Hospital and stated in sum and substance MR. NUNEZ IS MONITORING YOUR TIME.

223. On June 18, 2015, ALEXANDER ANDERSON met with Ms. Nicole Phillips (EEO Investigation Officer) in the Human Resources office.

224. ALEXANDER ANDERSON complained about being targeted by Mr. Nunez because of the false information concerning his attendance.

225. Ms. Phillips informed ALEXANDER ANDERSON that she was prohibited from investigating his complaint because EEOC has an ongoing investigation concerning other complaints made by ALEXANDER ANDERSON.

226. Ms. Phillips instructed ALEXANDER ANDERSON to contact his EEOC Investigator.

**ALEXANDER ANDERSON'S Requests and Does Not Receive a Reasonable Accommodation**

227. On June 16, 2015, ALEXANDER ANDERSON suffered a severe emotional breakdown at his work station and was taken to the psychiatric emergency room for treatment.

228. The attending psychiatrist ordered ALEXANDER ANDERSON to take five days leave of duty and meet with his therapist.

229. On June 19, 2015, ALEXANDER ANDERSON met with Dr. Yvonne Rountree (Psychologist), who treated ALEXANDER ANDERSON for anxiety and depression.

230. Dr. Rountree recommended that ALEXANDER ANDERSON take a medical leave of absence from work, because of his overwhelming feelings of emotional distress, anger and anxiety related to manager's discriminatory actions against him.

231. On January 4, 2016, ALEXANDER ANDERSON returned to work as a Social Worker Level II at Lincoln Hospital Behavioral Health Department at Inpatient Psychiatric Unit 10C.

232. ALEXANDER ANDERSON submitted his letter to Human Resources concerning Dr. Rountree's recommendation that he should be transferred to another HHC facility to support his recovery and avoid reoccurrences of mental health problems.

233. Defendants denied ALEXANDER ANDERSON's request for a reasonable accommodation and failed to engage in the interactive process.

## FIRST CAUSE OF ACTION
## <u>VIOLATION OF TITLE VII OF THE CIVIL RIGHT ACT OF 1964</u>
## <u>UNLAWFUL EMPLOYMENT PRACTICES BASED ON RACE</u>
## <u>(As to Defendant HHC)</u>

234. ALEXANDER ANDERSON realleges and incorporates by reference all allegations in all preceding paragraphs.

235. Defendant HHC's  actions violated Title VII.

236. Defendant HHC engaged in illegal discrimination on the basis of race by failing to promote him in May 2014, and November 2016.

237. As a consequence of Defendant HHC's discrimination, ALEXANDER ANDERSON suffered financial harm, physical harm and severe emotional distress.


## SECOND CAUSE OF ACTION
## VIOLATION TITLE VII OF THE CIVIL RIGHTS ACT OF 1964
## UNLAWFUL DISCRIMINATORY PRACTICES BASED ON COLOR
## (As to Defendant HHC)

238. ALEXANDER ANDERSON realleges and incorporates by reference all allegations in all preceding paragraphs.

239. Defendant HHC's  actions violated Title VII.

240. Defendant HHC's engaged in illegal discrimination on the basis of color by failing to promote him in May 2014, and November 2016.

241. As a consequence of Defendant HHC's discrimination, ALEXANDER ANDERSON suffered financial harm, physical harm and severe emotional distress.


## THIRD CAUSE OF ACTION
## VIOLATION OF TITLE VII OF CIVIL RIGHT ACT OF 1964
## UNLAWFUL DISCRIMINATORY PRACTICES BASED ON SEX
## (As to Defendant HHC)

242. ALEXANDER ANDERSON realleges and incorporates by reference all allegations in all preceding paragraphs.

243. Defendant HHC's  actions violated Title VII.

244. Defendant HHC's engaged in illegal discrimination on the basis of sex by failing to promote him in January 2014, May 2014, February 2015, and November 2016.

245. As a consequence of Defendant HHC's discrimination, ALEXANDER ANDERSON suffered financial harm, physical harm and severe emotional distress.

**FOURTH CAUSE OF ACTION**
**VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT 1964**
**RETALIATION**
**(As to Defendant HHC)**

246. ALEXANDER ANDERSON realleges and incorporates by reference all allegations in all preceding paragraphs.

247. In violation of Title VII § 704(a) Defendant HHC engaged in illegal discrimination on the basis of race, color and gender by retaliating against ALEXANDER ANDERSON when he opposed illegal discrimination by Defendant HHC.

248. As a consequence of Defendant HHC's discrimination, ALEXANDER ANDERSON suffered financial harm, physical harm and severe emotional distress.

**FIFTH CAUSE OF ACTION**
**VIOLATION OF THE NEW YORK CITY HUMAN RIGHTS LAW**
**UNLAWFUL DISCRIMINATORY PRACTICES BASED ON RACE**
**(As to Some Defendants)**

249. ALEXANDER ANDERSON realleges and incorporates by reference all allegations in all preceding paragraphs.

250. Defendants' actions violated NYCHRL.

251. Defendants HHC, Miriam Carasa, Abdul Mondul, Athena Motal, Nicole Robinson (but not Milly Toro, and Maria Kazaki-Maher) engaged in illegal discrimination on the basis of race by failing to promote him in December 2013, May 2014, and November 2016.

252. Only Defendant HHC and Defendant Maher created a hostile work environment.

253. As a consequence of Defendants' discrimination, ALEXANDER ANDERSON suffered financial harm, physical harm and severe emotional distress.

254. Defendant Carasa, Defendant Mondul, Defendant Motal, Defendant Robinson (but not Defendant Toro or Defendant Kazaki) outrageous and malicious conduct, was intended to injure ALEXANDER ANDERSON, and was done with reckless indifference to ALEXANDER ANDERSON's protected civil rights, entitling ALEXANDER ANDERSON to an award of punitive damages.

**SIXTH CAUSE OF ACTION**
**VIOLATION OF NEW YORK CITY HUMAN RIGHTS LAW**
**UNLAWFUL DISCRIMINATORY PRACTICES BASED ON COLOR**
**(As to Some Defendants)**

255. ALEXANDER ANDERSON realleges and incorporates by reference all allegations in all preceding paragraphs.

256. Defendants' actions violated NYCHRL.

257. Defendants HHC, Miriam Carasa, Abdul Mondul, Athena Motal, Nicole Robinson (but not Milly Toro, and Maria Kazaki-Maher) engaged in illegal discrimination on the basis of color by failing to promote him in December 2013, May 2014, and November 2016.

258. Only Defendant HHC and Defendant Maher created a hostile work environment.

259. As a consequence of Defendants' discrimination, ALEXANDER ANDERSON suffered financial harm, physical harm and severe emotional distress.

260. Defendant Carasa, Defendant Modul, Defendant Motal, Defendant Robinson (but not Defendant Toro or Defendant Kazaki) outrageous and malicious conduct, was intended to

injure ALEXANDER ANDERSON, and was done with reckless indifference to ALEXANDER ANDERSON's protected civil rights, entitling ALEXANDER ANDERSON to an award of punitive damages.

## SEVENTH CAUSE OF ACTION
## VIOLATION OF THE NEW YORK CITY HUMAN RIGHTS LAW
## UNLAWFUL DISCRIMINATORY PRACTICES BASED ON GENDER
## (As to Some Defendants)

261. ALEXANDER ANDERSON realleges and incorporates by reference all allegations in all preceding paragraphs.

262. Defendants' actions violated NYCHRL.

263. Defendants HHC, Miriam Carasa, Abdul Mondul, Athena Motal, Nicole Robinson (but not Milly Toro, and Maria Kazaki-Maher) engaged in illegal discrimination on the basis of gender by failing to promote him in December 2013, January 2014, May 2014, February 2015, and November 2016.

264. Only Defendant HHC and Defendant Maher created a hostile work environment.

265. As a consequence of Defendants' discrimination, ALEXANDER ANDERSON suffered financial harm, physical harm and severe emotional distress.

266. Defendant Carasa, Defendant Modul, Defendant Motal, Defendant Robinson (but not Defendant Toro or Defendant Kazaki) outrageous and malicious conduct, was intended to injure ALEXANDER ANDERSON, and was done with reckless indifference to ALEXANDER ANDERSON's protected civil rights, entitling ALEXANDER ANDERSON to an award of punitive damages.

## EIGHT CAUSE OF ACTION
## VIOLATION OF THE NEW YORK CITY HUMAN RIGHTS LAW
## UNLAWFUL DISCRIMINATORY PRACTICES BASED ON AGE

**(As to Some Defendants)**

267. ALEXANDER ANDERSON realleges and incorporates by reference all allegations in all preceding paragraphs.

268. Defendants' actions violated NYCHRL.

269. Defendants HHC, Miriam Carasa, Abdul Mondul, Athena Motal, Nicole Robinson (but not Milly Toro, and Maria Kazaki-Maher) engaged in illegal discrimination on the basis of age by failing to promote him in December 2013, January 2014, May 2014, February 2015, and November 2016.

270. Only Defendant HHC and Defendant Maher created a hostile work environment.

271. As a consequence of Defendants' discrimination, ALEXANDER ANDERSON suffered financial harm, physical harm and severe emotional distress.

272. Defendant Carasa, Defendant Modul, Defendant Motal, Defendant Robinson (but not Defendant Toro or Defendant Kazaki) outrageous and malicious conduct, was intended to injure ALEXANDER ANDERSON, and was done with reckless indifference to ALEXANDER ANDERSON's protected civil rights, entitling ALEXANDER ANDERSON to an award of punitive damages.

**NINTH CAUSE OF ACTION**
**VIOLATION OF THE NEW YORK CITY HUMAN RIGHTS LAW**
**UNLAWFUL DISCRIMINATORY PRACTICES BASED ON DISABILITY**
**(As to Defendant HHC)**

273. ALEXANDER ANDERSON realleges and incorporates by reference all allegations in all preceding paragraphs.

274. Defendants' actions violated NYCHRL.

275. DEFENDANTS engaged in illegal discrimination on the basis disability and failed to provide a reasonable accommodation.

276. As a consequence of DEFENDANTS' discrimination, ALEXANDER ANDERSON suffered financial harm, physical harm and severe emotional distress.

## TENTH CAUSE OF ACTION
## <u>VIOLATION OF THE NEW YORK CITY HUMAN RIGHTS LAW</u>
## <u>RETALIATION</u>
## <u>(As to All Defendants)</u>

277. ALEXANDER ANDERSON realleges and incorporates by reference all allegations in all preceding paragraphs.

278. In violation of the NYCHRL Defendants engaged in illegal discrimination on the basis of race, color and gender by retaliating against ALEXANDER ANDERSON when he opposed illegal discrimination by Defendants.

279. As a consequence of Defendants' discrimination, ALEXANDER ANDERSON suffered financial harm, physical harm and severe emotional distress.

280. Defendants' (but not Defendant HHC) outrageous and malicious conduct was intended to injure ALEXANDER ANDERSON's protected rights, entitling ALEXANDER ANDERSON to an award of punitive damages.

## <u>PRAYER FOR RELIEF</u>

WHEREFORE, ALEXANDER ANDERSON on behalf of himself, respectfully requests that this Court grant the following relief:

A. A declaratory judgment that the practices complained of herein are unlawful under Title VII and the NYCHRL;

B. An injunction against Defendants and their officers, agents, successors, employees, representatives and any and all persons acting in concert with them as provided by

law, from engaging in each of the unlawful practices, policies and patterns set forth herein;

C.   An award for damages for all lost wages, benefits, and promotional opportunities resulting from Defendants' unlawful discrimination and retaliation and to otherwise make his whole for any losses suffered as a result of such unlawful employment practices;

D.   An award for compensatory damages for mental, emotional and physical injury, distress, pain and suffering and injury to his reputation in an amount to be proven;

E.   An award for punitive damages (limited to the individual defendants);

F.   An award for ALEXANDER ANDERSON attorneys' fees, costs, disbursements, and expenses including the fees and costs of experts incurred in the prosecution of the actions;

G.   An award for such other and further relief as the Court may deem equitable, just and proper to remedy the Defendants' unlawful employment practices.

Dated: Bronx, NY
October 20, 2017

                                   Respectfully submitted,


                                   _____/s/_____
                                   Delmas a. Costin, Jr., Esq.
                                   *Attorney for Alexander Anderson*
                                   177 E. 161 Street
                                   Bronx, NY 10451
                                   Tel: (718) 618-0589
                                   Fax: (347) 510-0099
                                   dacostin@dacostinlaw.com


To:   Garrett Scott Kamen
      New York City Law Department

100 Church Street
New York, NY 10007
(212) 356-2479 (O)
(212) 788-3770 (F)
gkamen@law.nyc.gov

**EXHIBIT A**

**A**

## Milly Toro - Re: Luis Pagan #1650261

| | |
|---|---|
| From: | Alexander Anderson |
| To: | Alex Aleman;  Maria Kazaki-Maher |
| Date: | 3/27/2014 1:01 PM |
| Subject: | Re: ▓▓▓▓▓▓▓▓ |

Alex,

Your approach to addressing this patient's concerns is inappropriate and unacceptable. This patient was admitted on 3/25 at 10 pm. He has been here less than two days asking for detox. I had him ready to go to Harlem yesterday but his electrolytes were low and the doctors advised to keep him overnight for observation. This patient informed me that he was drinking alcohol daily prior to coming to the ED, therefore he may not see withdrawal symptoms until much later. In the past, he has showed up at Lincoln ED repeatedly asking for help because he stated "I can't stop drinking on my own." You made an inappropriate referral the last time you met with this patient in February. I endorsed the patient to you so that you could build a rapport with him and guide him in the recovery process. You should've advocated for the patient with Ms. Soto or called Dr. Nahar and informed her of the situation.  Instead you chose to ignored the patient's concerns and my instructions. The only reason you referred this patient to an outpatient program is because it was convenient for you. I have repeatedly informed you and Anette to focus on quality and not quantity, however you continue to ignore our procedures and protocols and put patient at risk.

>>> Alex Aleman 3/27/2014 11:43 AM >>>

Hello Mr. Anderson, I called Mrs. Marisol Soto and she stated that patient does not meet the criteria for detox program. Also I called several rehab programs and they reported that they did not have any beds available until 4/2/2014 and checked patiemt medicaid insurance and is inactive. Please read the prorgress report that I wrote on patient, thank you very much. I also informed Dr. Cevallos about it and gave patient a referral to outpatient program.

>>> Alexander Anderson 03/26/14 4:08 PM >>>
Hi Alex,

Please visit ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ early because he was suppose to go to Harlem Hospital detox today but his electroiytes were too low so the doctor decided to keep him another day. He should be ready to leave early in the morning (but check to make sure he is okay to travel). Contact Dr. Cevallos (27172)  or Dr. Netrebko (61144) in order to coordinate his discharge.

Maria, please don't let this patient be ignored because he has been requesting help from us since February and we have not follow-up thoroughly. So, please make sure Alex work with this patient through the whole process. Thanks.