**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

ALEXANDER ANDERSON,

                Plaintiff,

    -against-

NEW YORK CITY HEALTH AND HOSPITALS
CORPORATION and ATHENA MOTAL,

              Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x



<u>MEMORANDUM DECISION</u>
<u>AND ORDER</u>

16 Civ. 1051 (GBD) (KHP)

GEORGE B. DANIELS, United States District Judge:

Plaintiff Alexander Anderson brings this action against Defendant New York City Health and Hospitals Corporation ("HHC"), where he was formerly employed as a social worker at the Lincoln Medical and Mental Health Center ("Lincoln Hospital"), and against Defendant Athena Motal, who was the Senior Associate Director of Hospitals in the Social Services Department at Lincoln Hospital from October 2011 through August 2014. (Second Am. Compl., ECF No. 85.) Plaintiff asserts claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e–2000e-17, and the New York City Human Rights Law, N.Y.C. Admin. Code §§ 8-101–8-131 (the "NYCHRL"). (*See id.* ¶¶ 234–80.) He alleges that during his employment at Lincoln Hospital, Defendants discriminated against him on the basis of his race, color, sex, age, and disability; retaliated against him for complaining about such discrimination; and subjected him to a hostile work environment. (*See id.*) Defendants move for summary judgment pursuant to Federal Rule of Civil Procedure 56, seeking dismissal of all of Plaintiff's claims. (Notice of Mot., ECF No. 168.)

Before this Court is Magistrate Judge Katharine H. Parker's March 2, 2020 Report and Recommendation (the "Report"), recommending that Defendants' motion be granted in part and

denied in part.[1] (Report, ECF No. 193, at 76.) Specifically, Magistrate Judge Parker recommended that Plaintiff's claims be dismissed, with the exception of (1) his claims of discrimination under the NYCHRL for failure to promote him to a position in the Mobile Crisis Unit ("MCU") in 2014 and under Title VII and the NYCHRL for failure to promote him to a position in the Mentally Ill Chemical Abuse ("MICA") program in 2015; (2) his claims of retaliation under Title VII and the NYCHRL with respect to denial of the promotions to the MCU position in 2014 and the MICA position in both 2014 and 2015; (3) his claims of retaliation under the NYCHRL with respect to verbal counseling that he received, the removal of certain of his supervisory duties, and his delay in promotion to Social Worker Level II; and (4) his claims of retaliation under Title VII and the NYCHRL as to other various actions taken by Defendants. (*Id.*) Magistrate Judge Parker advised the parties that failure to file timely objections to the Report would constitute a waiver of those objections on appeal. (*Id.*) Defendants filed timely objections. (Defs.' Objs., Pursuant to FRCP 72(b), to the R. &. R. Filed Mar. 2, 2020 ("Objs."), ECF No. 199.) Plaintiff filed responses to those objections. (Pl.'s Resp. to Defs.' Objs., Pursuant to FRCP 72(b), to the R. & R. Filed Mar. 2, 2020, ECF No. 202.) Having reviewed Magistrate Judge Parker's Report, as well as Defendants' objections and Plaintiff's responses, this Court ADOPTS the Report in full and overrules Defendants' objections.

## I. FACTUAL BACKGROUND

Plaintiff is a 61-year-old African American male who was employed by Defendant HHC as a social worker at Lincoln Hospital from August 29, 2011 through July 21, 2017. (Defs.' Statement of Uncontested Facts on Mot. for Summ. J. Pursuant to Local Rule 56.1 ("Defs.' Rule 56.1 Statement"), ECF No. 169, ¶ 1; Pl.'s Counter Statement Pursuant to Local Rule 56.1 ("Pl.'s

---

[1] The relevant factual and procedural background is set forth in greater detail in the Report and is incorporated by reference herein.

Rule 56.1 Statement"), ECF No. 184, ¶ 1.) During Plaintiff's tenure at Lincoln Hospital, social workers were classified as Level I, Level II, Level III, Level IV, or Level V, with the latter three levels being supervisory positions. (Defs.' Rule 56.1 Statement ¶¶ 12–13; Pl.'s Rule 56.1 Statement ¶¶ 12–13.)

Plaintiff began working at Lincoln Hospital in the Social Services Department as a Social Worker Level I in the Program to Address Substance Abuse ("PASA"). (Defs.' Rule 56.1 Statement ¶¶ 2, 15; Pl.'s Rule 56.1 Statement ¶¶ 2, 15.) In the years that followed, he sought several promotions to various positions, including to PASA Supervisor, Social Worker Level III in the MCU, Social Worker Level III in the MICA program, and Senior Addiction Counselor Level I in the Screening, Brief Intervention and Referral to Treatment ("SBIRT") program. (*See* Defs.' Rule 56.1 Statement ¶¶ 32, 72, 90, 116; Pl.'s Rule 56.1 Statement ¶¶ 32, 72, 90, 116). Plaintiff's requests for all such promotions were denied. (*See* Defs.' Rule 56.1 Statement ¶¶ 35, 87, 93, 126, 129, 132; Pl.'s Rule 56.1 Statement ¶¶ 35, 87, 93, 126, 129, 132.)

In December 2013, Defendant Motal informed Plaintiff that she would recommend him for a discretionary promotion, from Social Worker Level I to Social Worker Level II. (*See* Defs.' Rule 56.1 Statement ¶ 40; Pl.'s Rule 56.1 Statement ¶ 40.) This promotion was delayed, which Plaintiff claims was due to an email that he sent in March 2014 to a PASA addiction counselor. (Pl.'s Rule 56.1 Statement ¶¶ 48, 56.) Defendants contend that Plaintiff's supervisors believed that the email was unprofessional and inappropriate, and, accordingly, met with Plaintiff the day after it was sent to provide Plaintiff with verbal counseling regarding the impropriety of his email, and to instruct him to stop supervising any of the PASA addiction counselors. (Defs.' Rule 56.1 Statement ¶¶ 49–50.) Plaintiff insists that he was expressly told that the meeting was not

3

disciplinary in nature, and that if the meeting was intended to give him verbal counseling, he would have been entitled to have a union representative present. (Pl.'s Rule 56.1 Statement ¶ 50.)

In any event, following the meeting, Motal informed human resources that Plaintiff had received verbal counseling, but that the matter was closed. (Defs.' Rule 56.1 Statement ¶ 53; Pl.'s Rule 56.1 Statement ¶ 53.) Although Defendants claim that Motal did not request cancellation of Plaintiff's promotion to Social Worker Level II, (Defs.' Rule 56.1 Statement ¶ 54), Plaintiff contends that Motal canceled the promotion in or around April 2014, (Pl.'s Rule 56.1 Statement ¶ 54). After Motal left her position as Senior Associate Director of Hospitals in August 2014, Plaintiff's request to be promoted to Social Worker Level II was resubmitted to human resources in or around September 2014. (Defs.' Rule 56.1 Statement ¶ 57; Pl.'s Rule 56.1 Statement ¶ 57.) Plaintiff was ultimately promoted to the position in October 2014. (Defs.' Rule 56.1 Statement ¶ 58; Pl.'s Rule 56.1 Statement ¶ 58.)

Plaintiff alleges that during Motal's tenure at HHC, there was a "[r]eduction and [e]xclusion" of male African American social workers at Lincoln Hospital. (Decl. of Alexander Anderson ("Anderson Decl."), ECF No. 181, at 4.) He further alleges that the decrease in the number of male African American social workers and the failure to hire any more "indicate[d] to [him] that African American males were not treated fairly by the social work department at Lincoln Hospital." (*Id.* ¶ 17.) He points to the denial of his own promotion requests and asserts that the applicants who were hired instead of him were all either female, younger than Plaintiff, or of a different race than Plaintiff. (*See id.* ¶¶ 19–22; Pl.'s Rule 56.1 Statement ¶¶ 17, 35, 87, 89, 93–94, 126, 129, 133–34.)

According to Plaintiff, aside from denying and delaying his promotion requests, Defendants subjected him to various other adverse actions throughout his employment at Lincoln

Hospital. He alleges, for example, that his supervisor refused to provide him with weekly clinical supervision in connection with his application to become a Licensed Clinical Social Worker. (Pl.'s Rule 56.1 Statement ¶ 63.) This same supervisor also denied a vacation request that Plaintiff made in November 2014, despite granting requests that other members of his team made around the same time. (Defs.' Rule 56.1 Statement ¶¶ 67–70; Pl.'s Rule 56.1 Statement ¶¶ 67–70.) In February 2015, Plaintiff was reassigned from PASA to the Social Services Department's Inpatient Psychiatric Unit, which Defendants assert was to alleviate staff shortages, (Defs.' Rule 56.1 Statement ¶¶ 100, 103), but which Plaintiff claims was in retaliation to his prior discrimination complaints, (Pl.'s Rule 56.1 Statement ¶ 149). Finally, after Plaintiff was diagnosed with mental health conditions, Lincoln Hospital granted his requests for medical leave and a modified work schedule, but HHC's Equal Employment Opportunity Office denied his request to be transferred to another HHC facility. (Defs.' Rule 56.1 Statement ¶¶ 104, 107–09, 111; Pl.'s Rule 56.1 Statement ¶¶ 104, 107–09, 111.)

Plaintiff made several complaints alleging discrimination and retaliation by Motal and others. He made the first of these complaints in as early as December 2013, when he informed Motal directly that, by appointing someone other than Plaintiff as PASA Supervisor, Motal discriminated against Plaintiff because he is African American. (Defs.' Rule 56.1 Statement ¶ 136; Pl.'s Rule 56.1 Statement ¶ 136.) Plaintiff also raised this complaint about Motal during a January 2014 interview with the Assistant Director of the Psychiatry Department for the position of Social Worker Level III in the MCU. (*See* Defs.' Rule 56.1 Statement ¶ 137; Pl.'s Rule 56.1 Statement ¶ 137.) He also filed several grievances with HHC and complaints with the Equal Employment Opportunity Commission, including in August 2014, December 2014, and February

2015, alleging discrimination and retaliation by Motal and others. (Defs.' Rule 56.1 Statement ¶¶ 141–42, 147–50; Pl.'s Rule 56.1 Statement ¶¶ 141–42, 147–50.)

## II. LEGAL STANDARDS

### A. Reports and Recommendations.

A court "may accept, reject, or modify, in whole or in part, the findings or recommendations" set forth in a magistrate judge's report. 28 U.S.C. § 636(b)(1)(C). The court must review *de novo* the portions of a magistrate judge's report to which a party properly objects. *Id.* The court, however, need not conduct a *de novo* hearing on the matter. *See United States v. Raddatz*, 447 U.S. 667, 675–76 (1980). Rather, it is sufficient that the court "arrive at its own, independent conclusion" regarding those portions of the report to which objections are made. *Nelson v. Smith*, 618 F. Supp. 1186, 1189–90 (S.D.N.Y. 1985) (citation omitted).

Portions of a magistrate judge's report to which no or "merely perfunctory" objections are made are reviewed for clear error. *See Edwards v. Fischer*, 414 F. Supp. 2d 342, 346–47 (S.D.N.Y. 2006) (citations omitted). The clear error standard also applies if a party's "objections are improper—because they are 'conclusory,' 'general,' or 'simply rehash or reiterate the original briefs to the magistrate judge.'" *Stone v. Comm'r of Soc. Sec.*, No. 17 Civ. 569 (RJS), 2018 WL 1581993, at *3 (S.D.N.Y. Mar. 27, 2018) (citation omitted). Clear error is present when "upon review of the entire record, [the court is] 'left with the definite and firm conviction that a mistake has been committed.'" *United States v. Snow*, 462 F.3d 55, 72 (2d Cir. 2006) (citation omitted).

### B. Rule 56 Motion for Summary Judgment.

Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). "An issue of fact is 'genuine' if 'the evidence is such that a reasonable jury could return a verdict for the

6

nonmoving party.'" *Gayle v. Gonyea*, 313 F.3d 677, 682 (2d Cir. 2002) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A fact is material when it "might affect the outcome of the suit under the governing law." *Id.* at 682 (quoting *Anderson*, 477 U.S. at 248).

The party seeking summary judgment has the burden of demonstrating that no genuine issue of material fact exists. *See Marvel Characters, Inc. v. Simon*, 310 F.3d 280, 286 (2d Cir. 2002). In turn, to defeat a motion for summary judgment, the opposing party must raise a genuine issue of material fact. *See Caldarola v. Calabrese*, 298 F.3d 156, 160 (2d Cir. 2002). To do so, it "must do more than simply show that there is some metaphysical doubt as to the material facts," *id.* (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)), and it "may not rely on conclusory allegations or unsubstantiated speculation," *Fujitsu Ltd. v. Fed. Express Corp.*, 247 F.3d 423, 428 (2d Cir. 2001) (quoting *Scotto v. Almenas*, 143 F.3d 105, 114 (2d Cir. 1998)). Rather, the opposing party must produce admissible evidence that supports its pleadings. *See First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 289–90 (1968). In this regard, "[t]he 'mere existence of a scintilla of evidence' supporting the non-movant's case is also insufficient to defeat summary judgment." *Niagara Mohawk Power Corp. v. Jones Chem., Inc.*, 315 F.3d 171, 175 (2d Cir. 2003) (quoting *Anderson*, 477 U.S. at 252).

In determining whether a genuine issue of material fact exists, the court must construe the evidence in the light most favorable to the opposing party and draw all reasonable inferences in that party's favor. *See id.* However, "a court must not weigh the evidence, or assess the credibility of witnesses, or resolve issues of fact." *Victory v. Pataki*, 814 F.3d 47, 59 (2d Cir. 2016) (citation omitted). Summary judgment is therefore "improper if there is any evidence in the record that could reasonably support a jury's verdict for the non-moving party." *Marvel*, 310 F.3d at 286.

## III. DISCRIMINATION CLAIMS UNDER TITLE VII AND THE NYCHRL

Discrimination claims under Title VII and the NYCHRL are analyzed pursuant to the burden-shifting framework articulated by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Ya-Chen Chen v. City Univ. of N.Y.*, 805 F.3d 59, 73–74 (2d Cir. 2015). Under this framework, the plaintiff bears the initial burden of establishing a prima facie case of discrimination. *McDonnell Douglas*, 411 U.S. at 802. To state a prima facie case of discriminatory failure to promote under Title VII, the plaintiff must demonstrate that (1) he is a member of a protected class, (2) he applied and was qualified for a job for which the defendant was seeking applicants, (3) he was rejected for the position, and (4) the position remained open and the defendant continued to seek applicants with the plaintiff's qualifications. *Aulicino v. N.Y.C. Dep't of Homeless Servs.*, 580 F.3d 73, 80 (2d Cir. 2009). Similarly, the elements of a prima facie case of discriminatory employment conditions under Title VII are that (1) the plaintiff was a member of a protected class, (2) he was performing his job duties satisfactorily, (3) he suffered an adverse employment action, and (4) such action occurred under circumstances that give rise to an inference of discrimination. *Spiegel v. Schulmann*, 604 F.3d 72, 80 (2d Cir. 2010). Under the more liberal standard of the NYCHRL, a plaintiff alleging discrimination need only show "by a preponderance of the evidence that [he] has been treated less well than other employees." *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 110 (2d Cir. 2013) (citation omitted).

If the plaintiff establishes a prima facie case of discrimination, the defendant may rebut that showing by providing a legitimate, nondiscriminatory reason for its actions. *McDonnell Douglas*, 411 U.S. at 802. The defendant is entitled to summary judgment unless the plaintiff,

8

who bears the "final and ultimate burden," demonstrates that the defendant's proffered reasons are in fact pretext. *Abrams v. Dep't of Pub. Safety*, 764 F.3d 244, 251 (2d Cir. 2014).

Magistrate Judge Parker correctly found that summary judgment should be granted to Defendants as to Plaintiff's discrimination claims, under both Title VII and the NYCHRL, for failure to promote Plaintiff in 2013 to PASA Supervisor, in 2014 to Social Worker Level III in the MICA program, and in 2016 to Senior Addiction Counselor Level I in the SBIRT program. (*See* Report at 26–30, 36–38, 40–42.) She also properly found that summary judgment is warranted dismissing Plaintiff's discrimination claim for failure to promote him in 2014 to Social Worker Level III in the MCU, but under Title VII only. (*See id.* at 30–36.)

With respect to Plaintiff's requests for promotion to Social Worker Level III in the MICA program and in the MCU, there is insufficient evidence from which a reasonable juror could conclude that Plaintiff's race, color, or gender was a motivating factor in the decision to promote other candidates over Plaintiff, as is required to allege a Title VII claim. (*See id.* at 35, 37–38.) Plaintiff fails to state a claim under even the more lenient standard of the NYCHRL with respect to the position in the MICA program, because Plaintiff's evidence of alleged pretext does not undermine the reason proffered for selecting the other candidate—the candidate's superior credentials. (*See id.* at 38.) With respect to Plaintiff's request for promotion to Senior Addiction Counselor Level I in the SBIRT program, Plaintiff fails to make a prima facie case of discrimination under either Title VII or the NYCHRL, given that he does not speak Spanish, which was a prerequisite for the position. (*See id.* at 40–42.) Finally, as to Plaintiff's request for promotion to PASA Supervisor, Plaintiff has not satisfied the initial burden of demonstrating that such a standalone position existed or that Defendants sought any candidate to fill any such position. (*See id.* at 30.)

Defendants are also entitled to summary judgment on Plaintiff's claims under Title VII and the NYCHRL that Defendants discriminated against him by (1) removing his supervisory responsibilities over PASA addition counselors, (2) delaying his promotion to Social Worker Level II in PASA, (3) denying him certain training opportunities, (4) denying his request for certain vacation days, (5) scrutinizing his attendance, and (6) reassigning him from PASA to the Inpatient Psychiatric Unit. (*See id.* at 42–54.) As Magistrate Judge Parker correctly observed, there is no evidence from which a trier of fact could conclude that discrimination was a factor in Defendants' conduct, or that Defendants' reasons for their actions were pretextual. (*See id.* at 45, 48–52, 54.)

Magistrate Judge Parker appropriately determined that summary judgment should be denied, however, as to (1) Plaintiff's NYCHRL claim against HHS and Motal for their alleged discriminatory failure to promote Plaintiff to Social Worker Level III in the MCU in 2014, and (2) Plaintiff's Title VII and NYCHRL claims against HHS for its alleged discriminatory failure to promote him to Social Worker Level III in the MICA program in 2015. (*See id.* at 30–36, 38–40.)

First, as to the MCU position, Magistrate Judge Parker found that a reasonable juror could conclude under the liberal standard of the NYCHRL that the main reason for selecting a different candidate—the candidate's mobile crisis experience—over Plaintiff was pretextual. (*See id.* at 35–36.) According to Plaintiff, mobile crisis experience was not a legitimate basis to deny him the position, given that he had approximately seven years of such experience from his employment at Bridge Bronx ACT and indicated as such during his interview. (Anderson Decl. ¶ 19.) On the other hand, the Assistant Director of the Psychiatry Department who interviewed Plaintiff attested that Plaintiff "did not provide any information [during the interview] indicating that he had mobile crisis experience," (Aff. of Lilyn Hill, ECF No. 172-31, ¶ 9), and that she "did not consider plaintiff's employment at Bridge Bronx ACT to be mobile crisis experience," (*id.* ¶ 10).

10

Magistrate Judge Parker found that this dispute could suggest that Defendants' reliance on Plaintiff's lack of experience is pretextual. (Report at 35–36.)

Defendants object to Magistrate Judge Parker's finding, arguing that they submitted legitimate nondiscriminatory reasons for promoting another candidate over Plaintiff, and that Plaintiff failed to demonstrate that discrimination "played any role" in Defendants' decision. (Objs. at 8.) They claim that Plaintiff's employment at Bridge Bronx ACT was not considered mobile crisis experience because as of January 2014, the Bridge Bronx ACT was not identified by the City of New York as a mobile crisis unit. (*Id.*) Defendants further ague that Plaintiff's failure to promote claim should be dismissed as to Motal because Motal was not involved in the decision-making process behind this particular promotion. (*Id.* at 9–10.)

Defendants made substantially the same arguments to Magistrate Judge Parker. (*See* Reply Mem. of Law in Further Supp. of Def.'s Mot. for Summ. J. ("Reply"), ECF No. 189, at 5–6 (contending that Plaintiff's employment at Bridge Bronx ACT was not considered mobile crisis experience because the Bridge Bronx ACT "was not among the three facilities identified by the City in January 2014 as providing mobile crisis services"); Mem. of Law in Supp. of Defs.' Mot. for Summ. J. ("Mem."), ECF No. 170, at 9 (arguing that Plaintiff "cannot . . . fault Motal for this hire" because "the Assistant Director of the Psychiatry Department . . . alone selected [the other candidate]).) Contrary to Defendants' assertions, Magistrate Judge Parker correctly found that there are genuine issues of material fact as to whether Plaintiff had relevant mobile crisis experience, and whether Motal was involved with the promotion decision. In particular, there are disputes of fact as to whether Plaintiff informed the Assistant Director of that experience, and whether the Assistant Director misjudged or disregarded such experience. *See Zakre v. Norddeutsche Landesbank Girozentrale*, 396 F. Supp. 2d 483, 509 (S.D.N.Y. 2005) (noting that

11

when analyzing a Title VII claim, "'an employer's disregard or misjudgment of a plaintiff's job qualifications may undermine the credibility of an employer's stated justification for an employment decision,' suggesting pretext"). Moreover, Plaintiff has alleged that Motal participated in the interviewing process and approved the hire, and he has produced a promotion form reflecting that Motal was involved in the decision. (*See* Report at 36.) As such, the record does not establish as a matter of law that discrimination played no role in the decision not to promote Plaintiff, or that Motal in no way participated in the decision.

Magistrate Judge Parker similarly found that Plaintiff provided "strong" evidence under Title VII and the NYCHRL that Defendant HHC's reasons for hiring the other candidate for the MICA position might be pretextual. (*See id.* at 40.) Plaintiff contends that the selected candidate had an open disciplinary action against her at the time that she was promoted, and that by hiring her, HHC ignored its policy of not promoting employees who had open disciplinary actions. (Anderson Decl. ¶ 21.) Magistrate Judge Parker concluded that this evidence raises an inference that the selected candidate did not, in fact, meet HHC's criteria for promotion, and that HHC's stated reason for hiring her over Plaintiff was a pretext for discrimination. (Report at 40.)

Defendants assert that Magistrate Judge Parker erred in denying their motion for summary judgment as to this failure to promote claim because she failed to assess whether Plaintiff established that his qualifications were "objectively so superior" to that of the selected candidate such that "no reasonable person exercising impartial judgment" could have chosen that candidate over Plaintiff. (Objs. at 4.) Defendants claim that Magistrate Judge Parker also erred in finding a material issue of fact "based solely upon Plaintiff's inadmissible, hearsay contention" that the selected candidate had an open disciplinary action. (*Id.* at 5.)

Notably, although Defendants allege that Plaintiff's contention is "inadmissible" "hearsay," they do challenge the *veracity* of Plaintiff's contention. They do not dispute, for example, that the selected candidate was subject to disciplinary action at the time of the promotion, that HHC had a policy of denying promotion to employees who had outstanding disciplinary actions, or that HHC circumvented such policy by promoting the selected candidate. Accordingly, based upon the record as a whole and viewing the evidence in the light most favorable to Plaintiff, as is appropriate on a Rule 56 motion for summary judgment, reasonable minds could differ as to whether HHC's reason for denying Plaintiff's promotion to the MICA position in 2015 was pretextual.

## IV.     RETALIATION CLAIMS UNDER TITLE VII AND THE NYCHRL

As with Plaintiff's discrimination claims, Plaintiff's retaliation claims under Title VII and the NYCHRL are analyzed pursuant to the *McDonnell Douglas* framework. *See Ya-Chen Chen*, 805 F.3d at 70. To survive summary judgment on a Title VII retaliation claim, the plaintiff must demonstrate that "(1) he participated in a protected activity known to the defendant; (2) the defendant took an employment action disadvantaging him; and (3) there exists a causal connection between the protected activity and the adverse action." *Abrams*, 764 F.3d at 257 (citation omitted). Under Title VII, if the defendant articulates a legitimate, nondiscriminatory explanation for its action, the burden shifts back to the plaintiff, who must show "that the desire to retaliate was the but-for cause of the challenged employment action." *Ya-Chen Chen*, 805 F.3d at 70 (quoting *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 352 (2013) .) To prevail on a retaliation claim under the NYCHRL, the plaintiff must show that he "took an action opposing [his] employer's discrimination and that, as a result, the employer engaged in conduct that was reasonably likely to deter a person from engaging in such action." *Mihalik*, 715 F.3d at 112 (citations omitted).

13

Magistrate Judge Parker properly recommended that summary judgment be granted with respect to Plaintiff's retaliation claims under both Title VII and the NYCHRL in connection with the denial of his promotions to a PASA Supervisor position and a SBIRT position, and under Title VII only in connection with the verbal counseling, removal of his PASA supervisory duties, and delay in his promotion to Social Worker Level II. (*See* Report at 63–64.) She found that summary judgment is proper with respect to the denied promotions because the PASA Supervisor position did not exist, and Plaintiff was not qualified for the SBIRT position. (*Id.* at 63.) She found that Plaintiff's retaliation claims pertaining to the verbal counseling, removal of supervisory duties, and delay in promotion should be dismissed, but under Title VII only, given the insufficient evidence that retaliation was the but-for cause of any of these actions. (*Id.* at 63–64.)

Magistrate Judge Parker also correctly recommended that summary judgment be denied as to (1) Plaintiff's Title VII and NYCHRL retaliation claims against HHC and Motal with respect to the denial of his promotions to the MCU and MICA positions in 2014, and against HHC only with respect to the denial of his promotion to the MICA position in 2015; (2) Plaintiff's NYCHRL retaliation claim against HHC and Motal with respect to the verbal counseling, removal of his PASA supervisory duties, and delay in his promotion to Social Worker Level II; and (3) Plaintiff's Title VII and NYCHRL retaliation claims against HHC and Motal for various other conduct. (*See id.* at 62–67.) These other retaliatory actions include allegations that HHC and Motal transferred Plaintiff to the Inpatient Psychiatric Unit, denied him the ability to work with the substance abuse community, gave him more work than to others in the Psychiatric Unit, refused his request to transfer out of the Psychiatric Unit or to another hospital, provided him with less clinical supervision than to another PASA social worker, denied him vacation time, threatened him with discipline for fabricated attendance issues, and failed to investigate his claims of discrimination.

(*See id.* at 64–66.) For all of these claims, Magistrate Judge Parker found that Plaintiff has proffered evidence from which a reasonable juror could conclude, for purposes of Title VII, that retaliation was the but-for cause of Defendants' actions, and, for purposes of the NYCHRL, that retaliation played a role in Defendants' actions. (*Id.* at 62, 64–66.)

Defendants argue that Magistrate Judge Parker erred in concluding that they are not entitled to summary judgment on Plaintiff's NYCHRL retaliation claim pertaining to his verbal counseling, removal of supervisory duties, and delay in promotion. In particular, Defendants dispute Magistrate Judge Parker's finding that there is evidence that Motal indicated to Plaintiff during a May 2014 interview for the MICA position that it was inappropriate for him to have made a discrimination complaint about her during his January 2014 interview with the Assistant Director of the Psychiatry Department, and that such evidence "could give rise to an inference of retaliatory motive." (Objs. at 10 (quoting Report at 64).) According to Defendants, "[s]uch an interference of retaliatory motive is wholly unsupported by the factual record before this Court." (*Id.*) Defendants further argue that Magistrate Judge Parker failed to analyze the removal of Plaintiff's supervisory duties separately under Title VII and under the NYCHRL, that Plaintiff did not have any formal PASA supervisory duties, and that Plaintiff's disciplinary verbal counseling was a legitimate nondiscriminatory rationale for why his promotion to Social Worker Level II was delayed. (*Id.* at 12–15.)

Defendants' arguments are unavailing. Plaintiff testified at his deposition that during his interview in May 2014 for the MICA position, Motal asked Plaintiff if he regretted anything, which Plaintiff interpreted to be a suggestion that he stop making complaints that she was discriminating against him. Specifically, he testified that she asked him during the interview if there is "anything that [he] regretted." (Anderson Dep., ECF No. 172-2, at 88:11–89:11.) He testified that he "knew

15

that she was asking [him] about complaining about her discriminating against [him]," that he "knew she wanted [him] to . . . stop saying that," and that he thought "she was actually saying to [him], . . . you want a job, you have to stop saying I discriminated against you." (*Id.* at 89:11–16.) Given that Plaintiff had complained about Motal to the Assistant Director in January 2014, just three months prior to his interview with Motal, a reasonable juror could conclude that Motal's question was intended to express her disapproval of Plaintiff complaining about her to the Assistant Director. Moreover, the verbal counseling and the removal of supervisory duties that had been delegated to Plaintiff occurred in March 2014, and Plaintiff alleges that Motal canceled his promotion to Social Worker Level II in or around April 2014. Considering the temporal proximity of all of these events and the totality of the evidence, a jury could find that retaliation played some role in the alleged discipline and delay in promotion.

Defendants also object to Magistrate Judge Parker's finding that summary judgment is improper as to Plaintiff's Title VII and NYCHRL claims regarding Plaintiff's transfer to the Inpatient Psychiatric Unit, denial of requested vacation and weekly clinical supervision, monitoring of attendance, and assignment of additional work, and regarding Defendants' alleged failure to investigate Plaintiff's claims of discrimination. (Objs. at 15–18.) Defendants argue that Plaintiff has provided no evidence that his transfer to the Inpatient Psychiatric Unit was motivated by retaliation, considering Plaintiff's own admission that he was reassigned because of a shortage of social workers, and the factual record showing that another social worker was also transferred to the Unit approximately one month after Plaintiff. (*Id.* at 15–16.) With regard to Plaintiff's allegations that he was denied requested vacation time and weekly clinical supervision and that his attendance was monitored, Defendants contend that even if such allegations were true, none of this conduct constitutes adverse employment action for purposes of a Title VII or NYCHRL retaliation

16

claim. (*Id.* at 16.) Defendants further assert that Plaintiff provides no evidence that his assigned workload was "objectively excessive and/or disproportionate to other coworkers, such that it would deter a reasonable person from engaging in protected activity." (*Id.* at 17.) Finally, regarding Defendants' alleged failure to investigate Plaintiff's discrimination claims, Defendants argue that they were following a "neutral policy applicable to all City employees" by closing Plaintiff's internal complaint within HHC since Plaintiff had filed an external complaint with the EEOC. (*Id.* at 17–18.)

Defendants' arguments are without merit. In reviewing retaliation claims under the NYCHRL, the Second Circuit has instructed district courts that "the totality of the circumstances must be considered because 'the overall context in which [the challenged conduct occurs] cannot be ignored.'" *Mihalik*, 715 F.3d at 113 (2d Cir. 2013) (alteration in original) (quoting *Hernandez v. Kaisman*, 957 N.Y.S.2d 53, 59 (1st Dep't 2012). Similarly, "in determining whether conduct amounts to an adverse employment action [under Title VII], the alleged acts of retaliation need to be considered both separately and in the aggregate, as even minor acts of retaliation can be sufficiently 'substantial in gross' as to be actionable." *Hicks v. Baines*, 593 F.3d 159, 165 (2d Cir. 2010) (citation omitted). Moreover, for purposes of a Title VII claim, "[a] plaintiff may prove that retaliation was a but-for cause of an adverse employment action by demonstrating weaknesses, implausibilities, inconsistencies, or contradictions in the employer's proffered legitimate, nonretaliatory reasons for its action." *Kwan v. Andalex Grp., LLC*, 737 F.3d 834, 846 (2d Cir. 2013). Here, Plaintiff provides sufficient evidence to create a triable issue of fact as to whether Defendants carried out the challenged actions in retaliation to Plaintiff's prior complaints about Defendants' allegedly discriminatory practices.

17

First, with respect to Plaintiff's transfer to the Inpatient Psychiatric Unit and assignment of additional work, Plaintiff provides evidence of weaknesses and inconsistences in Defendants' stated reasons for their actions, and circumstantial evidence suggesting retaliatory motives. According to Plaintiff, a supervisor told Plaintiff that he was "moved from PASA to [the Inpatient Pyschiatric Unit] because [Plaintiff is] a trouble maker" and "management considers [him] to be a trouble maker." (Second Am. Compl. ¶ 214.) A reasonable juror could view this comment as management considering Plaintiff to be a troublemaker because of his discrimination complaints. Plaintiff also alleges that upon the transfer, he was "routinely . . . assigned a larger caseload than other members" and that he "complained about this, but with little success." (Anderson Decl. ¶ 32.) Aside from being given additional work, Plaintiff alleges that he was "not allowed to provide any substance abuse counseling, refer to treatment programs, or supervise other social workers or additional counselors," (id.), and that the transfer therefore "harmed [his] professional development as a substance abuse social worker," (Second Am. Compl. ¶ 219).

Finally, even assuming, *arguendo*, that denying Plaintiff's requested vacation time or weekly clinical supervision, monitoring Plaintiff's attendance, or ceasing the internal investigation of Plaintiff's complaints do not, on their own, constitute adverse employment action, the totality of the circumstances and the challenged actions in the aggregate could lead a trier of fact to conclude that these actions would not have occurred absent a retaliatory motive. This is particularly so considering the circumstantial evidence surrounding these actions. For example, with respect to Plaintiff's request for vacation on December 26, 2014, Plaintiff alleges that his supervisor denied such request, saying that there was "no coverage" and that he should "stop asking." (Pl.'s Rule 56.1 Statement ¶ 70.) However, his supervisor subsequently approved another employee's request for vacation for the same date. (*Id.*) Similarly, regarding the clinical

supervision, Plaintiff claims that his supervisor "ceased having [weekly] meetings and made up reasons for why she could no longer meet with [Plaintiff]," and yet continued meeting with another PASA social worker on a weekly basis. (*Id.* at 63.)

Upon review of the entire record, and based on the discrepancies in Defendants' proffered explanations for their actions, a reasonable juror could infer that such explanations were pretextual, and that, coupled with the temporal proximity between Plaintiff's complaints and Defendant's actions, retaliation was the but-for cause of and played a role in these actions. As such, drawing all inferences in Plaintiff's favor, as is required on a motion for summary judgment, there is sufficient evidence to require denial of Defendants' motion on Plaintiff's retaliation claims regarding the transfer, denied vacation and weekly supervision, monitored attendance, assignment of additional work, and Defendants' investigation of Plaintiff's discrimination claims.

## V.    HOSTILE WORK ENVIRONMENT CLAIMS UNDER TITLE VII AND THE NYCHRL

Summary judgment is proper as to Plaintiff's hostile work environment claim under Title VII and the NYCHRL. To establish a prima facie case of hostile work environment under Title VII, a plaintiff must "show that the discriminatory harassment was 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment,' and 'that a specific basis exists for imputing' the objectionable conduct to the employer." *Tolbert v. Smith*, 790 F.3d 427, 439 (2d Cir. 2015) (citation omitted). "It is axiomatic that the plaintiff also must show that the hostile conduct occurred because of a protected characteristic." *Id.* (citation omitted). A plaintiff asserting such a claim under the NYCHRL must show that the defendant treated him "less well" because of his membership in a protected class. *Mihalik*, 715 F.3d at 110 (quoting *Williams v. N.Y.C. Hous. Auth.*, 872 N.Y.S.2d 27, 39 (1st Dep't 2009)). Here, as Magistrate Judge Parker correctly found, the alleged incidents giving rise to Plaintiff's hostile

work environment claims—including, *inter alia*, that he was told that "management did not like him" and that he did not "fit in," (Pl.'s Mem. of Law in Opp'n to Defs.' Mot. for Summ. J., ECF No. 183, at 26)—do not provide a basis for such a claim under Title VII. (Report at 71–72.) Namely, the incidents were, "at most, episodic rather than pervasive," and Plaintiff fails to connect these incidents to any discriminatory animus. (*Id.*) Nor does Plaintiff allege facts showing that he was treated less well due to a protected characteristic, as is required to establish a hostile work environment claim under the NYCHRL. (*Id.* at 72.)

## VI. DISABILITY DISCRIMINATION CLAIM UNDER THE NYCHRL

Finally, summary judgment is appropriate as to Plaintiff's disability discrimination claim under the NYCHRL against HHC for its denial of Plaintiff's request for a transfer out of the Inpatient Psychiatric Unit. A prima facie case under the NYCHRL of disability discrimination for failure to accommodate requires a plaintiff to show that "(1) the employee has a disability under the relevant statute, (2) an employer covered by the statute had notice of [his] disability, (3) with reasonable accommodations, [he] could perform the essential functions of [his] job, and (4) [his] employer refused to make such accommodations." *Urena v. Swiss Post Sols., Inc.*, No. 16 Civ. 1998 (LGS), 2016 WL 5173389, at *2 (S.D.N.Y. Sept. 21, 2016). Magistrate Judge Parker properly found that Plaintiff fails to meet the third or fourth elements, given that Plaintiff's request to be transferred "was not tied to performing any job function," Plaintiff has provided "no evidence whatsoever" showing that he could not perform his functions unless he was transferred, and, "[i]n fact, all evidence is to the contrary." (Report at 74.) Because Plaintiff's request for a transfer was merely a personal preference, and the NYCHRL does not require a employer to accommodate the personal preferences of an employee with a disability, *Kelly v. Starwood Hotels & Resorts*

20

*Worldwide, Inc.*, No. 15 Civ. 6309 (DLC), 2017 WL 1133433, at \*3 (S.D.N.Y. Mar. 24, 2017), Defendants are entitled to summary judgment on this claim.

## VII.    CONCLUSION

Defendants' objections are OVERRULED, and Magistrate Judge Parker's Report is ADOPTED. Defendants' motion for summary judgment, (ECF No. 168) is DENIED as to Plaintiff's alleged (1) NYCHRL claim against HHS and Motal for their discriminatory failure to promote Plaintiff to Social Worker Level III in the MCU in 2014; (2) Title VII and NYCHRL claims against HHS for its discriminatory failure to promote him to Social Worker Level III in the MICA program in 2015; (3) Title VII and NYCHRL retaliation claims against HHC and Motal with respect to the denial of his promotions to the MCU and MICA positions in 2014, and against HHC only with respect to the denial of his promotion to the MICA position in 2015; (4) NYCHRL retaliation claim against HHC and Motal with respect to the verbal counseling, removal of his PASA supervisory duties, and delay in his promotion to Social Worker Level II; and (5) Title VII and NYCHRL retaliation claims against HHC and Motal with respect to his transfer to the Inpatient Psychiatric Unit, denial of the ability to work with the substance abuse community, assignment of additional work, refusal of his request to transfer out of the Psychiatric Unit or to another hospital, denial of weekly clinical supervision and of requested vacation time, threats of discipline for fabricated attendance issues, and failure to investigate his claims of discrimination. (*See id.* at 64–66.) Defendants' motion is GRANTED as to all other claims against them. The Clerk of Court is directed to close the motion accordingly.

Dated: New York, New York
      March 31, 2020

SO ORDERED.

*George B. Daniels*

GEORGE B. DANIELS
United States District Judge

21