**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| ALEXANDER ANDERSON | Case No. 16-CV-01051 (GBD) (KHP) |
| Plaintiff, | |
| - against - | |
| NEW YORK CITY HEALTH AND HOSPITALS CORPORATION, *and* ATHENA MOTAL | |
| Defendants. | |

## <u>JURY INSTRUCTIONS</u>

November 16, 2021

## TABLE OF CONTENTS

*JURY INSTRUCTIONS* ........................................................................................................ *1*

   **I.** *GENERAL INSTRUCTIONS* ...................................................................................... *4*

       A.  **Introductory Remarks** .................................................................................... **4**

       B.  **Role of the Court** ............................................................................................ **5**

       C.  **Role of the Jury** .............................................................................................. **6**

       D.  **Role of Counsel** .............................................................................................. **7**

       E.  **Sympathy or Bias** .......................................................................................... **8**

       F.  **Burden of Proof** ............................................................................................. **9**

       G.  **Direct and Circumstantial Evidence** ......................................................... **12**

       H.  **Witness Credibility** ...................................................................................... **13**

       I.  **Prior Inconsistent Statements** .................................................................... **15**

       J.  **Bias of Witnesses** ......................................................................................... **16**

       K.  **Uncalled Witnesses Equally Available to Both Sides** ............................... **17**

  **II.**    *INSTRUCTIONS AS TO SPECIFIC CLAIMS* ............................................ *18*

       A.  **Overview** ....................................................................................................... **18**

       B.  **Failure to Promote – Title VII** .................................................................... **19**

       C.  **Elements Of Plaintiff's Retaliation Claims Under Title VII** .................... **22**

       D.  **Failure to Promote – New York City Human Rights Law** ...................... **25**

       E.  **Retaliation – New York City Human Rights Law** ..................................... **26**

       F.  **Damages – Generally** ................................................................................... **28**

       G.  **Damages Must Be Reasonable and Not Speculative** ................................ **29**

       H.  **Damages Based on Evidence - All Claims** .................................................. **30**

       I.  **Emotional Distress** ....................................................................................... **31**

       J.  **Eggshell Plaintiff** ......................................................................................... **32**

       K.  **Proposed Jury Instruction No. 23** ............................................................. **33**

       L.  **Proposed Jury Instruction No. 24** ............................................................. **34**

*III. FINAL INSTRUCTIONS ON PROCEDURE* ............................................... *36*

  **A. Right to See Exhibits and Hear Testimony; Communications With Court** ..................... **36**

  **B. Duty to Deliberate/Unanimous Verdict** ................................................................ **37**

  **C. Verdict Form** .................................................................................................... **38**

  **D. Duties of Foreperson** ........................................................................................ **39**

**E. Return of Verdict**........................................................................................................**40**

*IV. CONCLUSION* ......................................................................................................... *41*

## I.      GENERAL INSTRUCTIONS

### A.   **Introductory Remarks**

Members of the jury, I will now instruct you as to the law that governs this case. You have been handed a copy of the instructions I will read. You should feel free to read along or to just listen to me. You will be able to take your copy of these instructions into the jury room.

You have heard all of the evidence in the case as well as the final arguments of the lawyers.  You have paid careful attention to the evidence, and I am confident that you will act together with fairness and impartiality to reach a just verdict.

There are three parts to these instructions. First, there are general instructions about your role, and about how you are to go about deciding the factual issues in this case. Second, there are instructions concerning the law applicable to the specific claims in this case. Third, there are final instructions about such matters as communications with the Court, about deliberations, and about returning a verdict.

It is important that you listen carefully. I'm reading these instructions from a prepared text because the law is made up of words that are very carefully chosen. So when I tell you what the law is, it is critical that I use exactly the right words.

B. **Role of the Court**

My duty is to instruct you on the law. It is your duty to accept these instructions of law and to apply them to the facts as you determine them. With respect to legal matters, you must take the law as I give it to you. If any attorney has stated a legal principle different from any that I state to you in my instructions, it is my instructions that you must follow.

You are to consider these instructions together as a whole; in other words, you are not to isolate or give undue weight to any particular instruction.  You must not substitute your own notions or opinions of what the law is or what you think it ought to be.

C. **<u>Role of the Jury</u>**

As members of the jury, you are the sole and exclusive judges of the facts. You decide what happened. You must determine the facts based solely on the evidence received in this trial. Any opinion I might have regarding the facts is of absolutely no consequence.

### D.  <u>Role of Counsel</u>

The personalities and the conduct of counsel in the courtroom are not in any way at issue. If you formed an opinion of any kind as to any of the lawyers in the case, favorable or unfavorable, whether you approved or disapproved of their behavior as advocates, that should not enter into your deliberations at all.

From time to time, the lawyers and I had conferences at the bench and other conferences out of your hearing. These conferences involved procedural and evidentiary matters and should not enter into your deliberations at all.

Lawyers have a duty to object when the other side offers testimony or other evidence that the lawyer believes is not admissible. It is my job to rule on those objections. Why an objection was made is not your concern. You should not draw any inference simply from the fact that a lawyer objects to a question. If I sustained the objection, you may not consider the testimony or exhibit at issue; if I overruled the objection, you should consider the testimony or exhibit just as you would any other evidence in the case.

E.  **Sympathy or Bias**

You must evaluate the evidence calmly and objectively, without prejudice or sympathy.  You must be completely fair and impartial.  Your verdict must be based solely on the evidence presented at this trial, or the lack of evidence.  Our system of justice cannot work unless you reach your verdict through a fair and impartial consideration of the evidence.

You may not consider, in deciding the facts of the case, any personal feelings you may have about the race, national origin, sex or age of any party or witness. You must regard the parties as of equal standing in the community, and of equal worth. All parties are entitled to the same fair trial at your hands. They stand equal before the law and are to be dealt with as equals in this court.

### F.  **Burden of Proof**

Because this is a civil case, the standard of proof is a preponderance of the evidence. In my instructions as to each claim or issue, I will tell you whether Ms. Motal or NYC Health and Hospitals Corporation – which I will refer to as the "Hospital" – has the burden of proof.

To establish by a preponderance of the evidence means that the evidence of the party having the burden of proof must be more convincing and persuasive to you than the evidence opposed to it. A preponderance of the evidence means the greater weight of the evidence. The difference in persuasiveness need not be great: it requires only that you find that the scales tip, however slightly, in favor of the party having the burden of proof – that what that party claims is more likely than not true. If you find that the credible evidence as to a particular issue is evenly divided, then you must find in favor of the party not having the burden of proof.

What is important here is the quality and persuasiveness of the evidence relied on by a party, and not the number of witnesses, the number or variety of the exhibits that party introduced, or the length of time that party spent on a particular subject. In determining whether any fact has been proven by a preponderance of the evidence, you may consider the testimony of the witnesses, the exhibits received in evidence, and any stipulated facts, regardless of which side introduced this evidence.  Simply because I have permitted certain evidence to be introduced does not mean that I have decided that it is important or significant.  That is for you to decide.

Some of you may have heard of proof beyond a reasonable doubt, which is the proper standard of proof in a criminal trial. That requirement does not apply to a civil case such as this and you should put it out of your mind.

### G.  What Is and Is Not Evidence

In determining the facts, you must rely upon your recollection of the evidence. The evidence in this case includes the testimony of the witnesses and the exhibits received in evidence.

As I instructed you at the outset of the trial, you are not to consider questions asked by the lawyers as evidence. It is the witnesses' answers that are evidence, not the questions.  The questions are significant only insofar as they put the answers in context.

From time to time, I asked witnesses questions. You should draw no inference from that.  My questions were only intended for clarification or to expedite matters and were not intended to suggest any opinion on my part as to whether any witness was more or less credible than any other witness, or any view as to what your verdict should be.

If I struck or excluded any testimony, you may not consider that testimony in rendering your verdict.

To constitute evidence, exhibits must first be received in evidence. Exhibits marked for identification but not admitted are not evidence, nor are materials that were used only to refresh a witness's recollection.

Arguments by the lawyers are not evidence, because the lawyers are not witnesses.  What they have said to you in their opening statements and in their closing arguments may help you understand the evidence and assist you in reaching a verdict, but these arguments are not evidence.  Moreover, if your recollection of the evidence differs from the statements made by the lawyers in their arguments to you, it is your recollection that controls.

Finally, any statements that I may have made during the trial do not constitute evidence. Similarly, any statements or rulings I have made during the trial, are not any indication of my views as to what your decision should be.  The decision here is for you alone.

It is for you alone to decide what weight, if any, should be given to the testimony and the exhibits received in evidence in this case.

H.  **Direct and Circumstantial Evidence**

Generally, there are two types of evidence that you may consider in reaching your verdict.

Direct evidence is testimony by a witness about something he or she knows by virtue of his or her own senses – something seen, felt, touched, or heard. For example, if a witness were to testify that when he or she left home this morning, it was raining, that would be direct evidence about the weather. Direct evidence may also be in the form of an exhibit.

Circumstantial evidence is evidence from which you may infer the existence of certain facts. For example, assume that when you came into the courthouse this morning the sun was shining, and it was a nice day. Assume that the courtroom blinds are drawn, and you can't look outside.  As you are sitting here, someone walks in with an umbrella, which is dripping wet. A few minutes later another person enters with a wet raincoat. Now, you can't look outside the courtroom and see whether it is raining. So you have no direct evidence of that fact.  But based on the facts that I have asked you to assume, you could conclude that it had been raining.

That is all there is to circumstantial evidence.  On the basis of reason, experience, and common sense, you infer from one established fact the existence or non-existence of some other fact.

The matter of drawing inferences from facts in evidence is not a matter of guesswork or speculation.  A proper inference is a logical, factual conclusion that you might reasonably draw from other facts that have been proven. It is often the case that material facts – such as what a person was thinking or intending – are not easily proven by direct evidence. Proof of such matters is often established by circumstantial evidence.

Circumstantial evidence is of no less value than direct evidence.

Anderson-Jury Instructions                                        12

## I.   <u>Witness Credibility</u>

You should evaluate the credibility or believability of the witnesses by using your common sense.  Common sense is your greatest asset as a juror.  Ask yourself whether the witness appeared honest, open and candid.  Did the witness appear evasive or as though he or she was trying to hide something? How responsive was the witness when questioned by opposing counsel as compared to that witness's responsiveness when questioned by his own lawyer?

If you find that any witness lied under oath, you should view the testimony of that witness cautiously and weigh it with great care. It is for you to decide, however, how much of that witness's testimony, if any, you wish to believe. Few people recall every detail of every event precisely the same way. A witness may be inaccurate, contradictory, or even untruthful in some respects, and yet entirely believable and truthful in other respects.  It is for you to determine whether such inconsistencies are significant or inconsequential, and whether to accept or reject all, or to accept some and reject the balance of, that witness's testimony.

In sum, it is up to you to decide whether a witness's testimony is truthful and accurate, in part, in whole, or not at all, as well as what weight, if any, to give to that witness's testimony.

In evaluating the testimony of any witness, you may consider, among other things:

-        the witness's intelligence;

-        the ability and opportunity the witness had to see, hear, or know the things that the witness testified about;

-        the witness's memory;

-        any interest, bias, or prejudice the witness may have;

-        the manner of the witness while testifying; and

-        the reasonableness of the witness's testimony in light of all the evidence in

the case, including testimony from other witnesses and the exhibits that have been received in evidence.

### J.  **Prior Inconsistent Statements**

You have heard evidence that, at some earlier time, witnesses have said or done something that counsel argues is inconsistent with their trial testimony.

Evidence of prior allegedly inconsistent statements was introduced to help you decide whether to believe the trial testimony of a witness. If you find that a witness made an earlier statement that conflicts with the witness's trial testimony, you may consider that fact in deciding how much of the witness's trial testimony, if any, to believe.

In making this determination, you may consider whether the witness purposely made a false statement or whether it was an innocent mistake; whether the inconsistency concerns an important fact, or whether it had to do with an insignificant detail; whether the witness had an explanation for the inconsistency, and whether that explanation accords with your common sense.

It is exclusively your decision, based upon all the evidence and your own good judgment, whether the prior statement was inconsistent, and if so how much weight, if any, to give the inconsistent statement in determining whether to believe all, part of, or none of that witness's testimony.

### K.  <u>Bias of Witnesses</u>

In deciding whether to believe a witness, you should consider any evidence that the witness is biased in favor of, or against, one side or the other. Likewise, you should consider evidence of any interest or motive that the witness may have in cooperating with one side or the other. You should also take into account any evidence that a witness may benefit in some way from the outcome of the case.

It is your duty to consider whether any witness has permitted bias or interest to color his or her testimony. If so, you should view that witness's testimony with caution, weigh it with great care, and subject it to close and searching scrutiny.

Of course, the mere fact that a witness has an interest in the outcome of this case does not mean that the witness has not told the truth. It is for you to decide from your observations and applying your common sense and life experience whether the possible interest of any witness has intentionally or otherwise colored or distorted that witness's testimony. You are not required to disbelieve a witness with an interest in the outcome of this case; you may accept as much of that witness's testimony as you deem reliable and reject as much as you deem unworthy of acceptance.

**L.  Uncalled Witnesses Equally Available to Both Sides**

During this trial, you heard the names of certain individuals who did not testify.

Each side had an equal opportunity or lack of opportunity to call witnesses. Therefore, you should not draw any inference or reach any conclusions as to what uncalled witnesses wouldhave testified to had they been called.

## II.   INSTRUCTIONS AS TO SPECIFIC CLAIMS

### A.  Overview

The plaintiff, Alexander Anderson, claims that he complained about discrimination, based on race and color, that he was a victim of discrimination based on being an African-American male and that Defendants retaliated against him. Mr. Anderson has brought claims under Title VII of the Civil Rights Act of 1964 ("Title VII"), and the New York City Human Rights Law ("NYCHRL").

Defendants deny all of Mr. Anderson's allegations.

### B.  <u>Failure to Promote – Title VII</u>

The plaintiff, Alexander Anderson, claims that Defendants denied him promotions to become the Mental Ill Chemical Abuse (MICA) supervisor in 2015 based on his being an African-American male, in violation of the Title VII.  Defendant denies the claim. It is your responsibility to determine whether Plaintiff has proven his claim by a preponderance of the evidence.

Title VII provides that it is unlawful for an employer to fail or refuse to hire any individual or to otherwise discriminate against any individual with respect to compensation, terms, conditions, or privileges of employment, because of the individual's status based on race and sex.

In order to prevail on his claim under Title VII and the New York City Human Rights Law, Mr. Anderson must prove each of the following elements by a preponderance of the evidence:

**<u>First</u>**, that he is a member of a protected class;

**<u>Second</u>**, that he applied for and was qualified for a job for which the employer was seeking applicants;

**<u>Third</u>**, that he was rejected for the position; and

**<u>Fourth</u>**, either (1) the position remain opened and Lincoln Hospital continued to seek applicants having Mr. Anderson's qualifications OR (2) the failure to hire occurred under circumstances giving rise to an inference

With respect to the first element, I direct you to find that Mr. Anderson's status as an African-American male is a protected class and satisfies the first element.

With respect to the second element, Mr. Anderson need only show that he possesses the

Anderson-Jury Instructions                                           19

basic skills necessary for performance of the job.[1]

With respect to the third element, I direct you to find that not hiring Mr. Anderson for promotional and non-promotional positions satisfies the third element.

The fourth element can be satisfied by at least one of two ways.  You will have to determine whether the MICA supervisor position remained open and Defendants continued to seek applicants having Mr. Anderson's qualifications.

Alternatively, the fourth element can also be satisfied if Defendants' failure to hire Mr. Anderson occurred under circumstances giving rise to an inference of a discriminatory motive.

You, the jury, can consider a number of circumstances that may give rise to an inference of discriminatory motive.  In determining whether Mr. Anderson's status of an African-American male was a motivating factor in the employment decision, some factors you may consider include the following: (1) whether you believe, or disbelieve Defendants' justifications for taking the adverse actions; (2) whether similarly situated employees were treated differently; (3) the timing and sequence of events leading to the adverse employment action; (4) whether decision makers made statements reflecting discriminatory animus; (5) whether a group of employees who were not in Mr. Anderson's protected class were treated more favorably than Mr. Anderson (6) whether Mr. Anderson was treated less favorably than a group of people who were not in his protected class and (7) more generally, the timing or sequence of events leading to Mr. Anderson's not being hired as the MCU and MICA supervisor.  These are merely factors, among many, that you may consider in determining whether Mr. Anderson's status as an African-American male was, in part a motivating factor which lead to the adverse employment action.

If you find that the preponderance of the evidence shows that Mr. Anderson's status as an African-American males was a motivating factor in the adverse employment actions, you must find for him with respect to his failure to promote claims under Title VII. If you find that the preponderance of the evidence does not show that Mr. Anderson's status as an African-American male was a motivating factor in the failure to promote Mr. Anderson, then you must find for Defendants with respect to Mr. Anderson's failure to promote claim under Title VII.

Authority:

42 USC §2000e-2; *Chertkova v. Conn. Gen. Life Ins. Co.,* 92 F .3d 81, 91 (2d Cir. 1996) (describing circumstances that give rise to an inference of discriminatory motive include actions or remarks made by decisionmakers that could be viewed as reflecting a discriminatory animus); *Aulicino v. New York City Department of Homeless Services,* 580 F.3d 73, 80 (2d Cir. 2009)

## C.  Elements Of Plaintiff's Retaliation Claims Under Title VII

The plaintiff, Alexander Anderson, claims that Defendants retaliated against him by

    a.  Denying him a promotion to become the MCU supervisor and the MICA supervisor 2014;

    b.  Denying him a promotion to become the MICA supervisor;

    c.  Involuntarily transferring him to the Inpatient Psychiatric Unit;

    d.  Denying him the ability to work with the substance abuse community;

    e.  Giving him more work in the Inpatient Psychiatric Unit than others;

    f.  Denying him a transfer out of the Psychiatric Unit;

    g.  Denying him an opportunity to transfer to another HHC hospital;

    h.  Denying him clinical supervision between Feb. 2014 and Sept. 2014;

    i.  Denying him vacation days in Dec. 2014;

    j.  Threatening to discipline him based on fabricated attendance issues;

    k.  Failing to investigate his claims of discrimination; and

    l.  Failing to hire him to work in other HHC facilities.

Defendants deny the claims. It is your responsibility to determine whether Plaintiff has proven his claim by a preponderance of the evidence.

In order to prevail on his claims of retaliation under Title VII, Mr. Anderson must prove, by a preponderance of the evidence, that (1) he participated in a protected activity; (2) Defendants had knowledge of the protected activity; (3) Plaintiff suffered an adverse employment action; and (4) a causal connection exists between the protected activity and the adverse employment action.

Element One - An employee engages in protected activity when he takes any action to protest or oppose statutorily prohibited discrimination. You may find that Plaintiff engaged in protected activity if he protested discrimination, either informally or formally, including complaints to management.

Here, Plaintiff has asserted that he engaged in protected activity when he made complaints of discrimination to his supervisors, union representatives, Human Resources, and senior management. If you find, by a preponderance of the evidence, that such conduct rises to the level

of a formal OR informal complaint of discrimination, you must find that Plaintiff has satisfied this element of his retaliation claim.

Element Two – The second element requires that Defendants had knowledge of Plaintiff's complaints of discrimination. An employer has knowledge of a Plaintiff's protected activity when the employer "understood, or could reasonably have understood, that plaintiff's opposition was directed at" prohibited discrimination. In order to show this, however, Plaintiff is not "required to show that the individual decision-makers had [actual] knowledge of his protected activity., it is sufficient if the corporate entity has been put on notice of plaintiff's complaint" of discrimination.

Thus, if you find that Defendants had knowledge of Plaintiff's complaints of discrimination then both Defendants had knowledge of Plaintiff's complaints of discrimination and you must find in favor of Plaintiff on this element.

Element Three – The third element of Plaintiff's retaliation claim requires a showing that Plaintiff suffered an adverse employment action. In order to satisfy the adverse employment action element, the plaintiff's burden has frequently been described as minimal. The plaintiff suffers an adverse employment action when the "terms and conditions" of the individual's employment are altered for the worse. Examples of materially adverse changes include termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices unique to a particular situation.

Employment decisions that affect work assignments are adverse employment actions. Indeed, an adverse employment action need not have any monetary consequence but can also include diminished responsibilities or "other indices that might be unique to a particular situation."

Element Four - Finally, the last element of Plaintiff's retaliation claim requires a causal

connection between Plaintiff's complaints of discrimination and the adverse action or actions he suffered. In order to demonstrate a causal connection, a plaintiff need only show that the protected activity came before the allegedly retaliatory adverse action.  There is no specific delay between the protected activity and the alleged adverse action.

Authority: 42 USC §20003-3(a); *Littlejohn v. City of New York,* 795 F.3d 297, 315-316 (2d Cir. 2015); *Abrams v. Department of Public Safety,* 764 F.3d 244, 257 (2d Cir. 2014); *Davis v. Metro. Transp. Auth.*, 2012 WL 727696, at *10 (S.D.N.Y. Mar. 6, 2012); *Knight v. City of N.Y.*, 303 F.Supp.2d 485, 496 (S.D.N.Y. 2004); *Cruz v. Coach Stores, Inc.*, 202 F.3d 560, 565 (2d Cir. 2000); *Risco v. McHugh*, 868 F.Supp.2d 75, 110 (S.D.N.Y. 2012)

### D.  <u>Failure to Promote – New York City Human Rights Law</u>

The plaintiff, Alexander Anderson, claims that Defendants denied him three promotions, the Mobile Crisis Unit supervisor in 2014, Mental Ill Chemical Abuse (MICA) supervisor in 2014 and the MICA supervisor in 2015, based on his being an African-American male, in violation of the Title VII.  Defendants deny the claims. It is your responsibility to determine whether Plaintiff has proven his claim by a preponderance of the evidence.

The New York City Human Rights law provides that it shall be unlawful discriminatory practice for an employer employee or agent thereof, because of the race gender of any person to discriminate against such person conversation or in terms, conditions or privileges of employment. Discrimination is to play no role in the making of employment decisions.  Mr. Anderson needs to show by a preponderance of the evidence, that his employer treated him less well, at least in part for a discriminatory reason.

If Mr. Anderson meets his burden of proof on the issue of whether he was treated less well than others for a discriminatory reason, then you must find for Mr. Anderson.  If Mr. Anderson is not able to meet his burden of proof on the issue of whether he was treated less well than others, then you must find or Defendants.

Authority: NYCHRL §8-101, *Williams v. N.Y.C. Hous. Auth*., 61 A.D.3d 62, 872 N.Y.S.2d 27, 38, 40 n.27 (1st Dep't 2009))

## E.  Retaliation – New York City Human Rights Law

The plaintiff, Alexander Anderson, claims that Defendants retaliated against him by

     a.  Verbal counseling for communications with Alex Aleman;
     b.  Revocation and subsequent delay in promotion to Social Worker Level II;
     c.  Removal of PASA supervisory duties;
     d.  Denying him a promotion to become the MCU supervisor and the MICA supervisor 2014;
     e.  Denying him a promotion to become the MICA supervisor;
     f.  Involuntarily transferring him to the Inpatient Psychiatric Unit;
     g.  Denying him the ability to work with the substance abuse community;
     h.  Giving him more work in the Inpatient Psychiatric Unit than others;
     i.  Denying him a transfer out of the Psychiatric Unit;
     j.  Denying him an opportunity to transfer to another HHC hospital;
     k.  Denying him clinical supervision between Feb. 2014 and Sept. 2014;
     l.  Denying him vacation days in Dec. 2014;
     m.  Threatening to discipline him based on fabricated attendance issues;
     n.  Failing to investigate his claims of discrimination; and
     o.  Failing to hire him to work in other HHC facilities.

Defendants deny the claims. It is your responsibility to determine whether Plaintiff has proven his claim by a preponderance of the evidence.

The New York City Human Rights Law makes the Defendants liable for retaliation in any manner against Mr. Anderson for his opposition to Defendants' conduct. Any manner of retaliation is sufficient.  For Mr. Anderson to prevail on this issue, he must show, by a preponderance of the evidence: (1) that he took an action opposing his employer's discrimination, and (2) that, as a result, the employer engaged in conduct that was reasonably likely to deter a person from engaging in such action.

If you find that Defendants have produced evidence that the alleged retaliation was all because of legitimate, non-retaliatory business reasons, Mr. Anderson has the burden of establishing by a preponderance of the evidence that the reasons offered by Defendants were not 16 the real reasons for the alleged retaliation, and that Mr. Anderson's opposition to or complaints of

employment discrimination were a determining factor in those actions.

If you find that Mr. Anderson has proved that the reasons offered by Defendants were an excuse for retaliation, then you will find for Mr. Anderson on this issue. If you find that Mr. Anderson has failed to prove that the reasons offered by Defendants were not really the reasons for the adverse employment actions, then you will find for Defendants on this issue.


Authority:  NYCHRL §8-107(7); *Mihalik v Credit Agricole Cheuvreux N. Am., Inc.*, 715 F3d 102, 116 (2d Cir 2013).  The City Council enacted a less restrictive standard to trigger a HRL violation in that it is now illegal to retaliate in any manner**."** *Sorrenti v. City of New York*, 17 Misc.3d 1102(A), 851 N.Y.S.2d 61 N.Y.Sup.2007.Aug 16, 2007). *Burlington Northern and Santa Fe Railway*, 126 S.Ct. 2405 (2006); *Jewish Guild for the Blind*, 786 N.Y.S.2d 382 (2004); *Mitchell v TAM Equities, Inc.*, 812 N.Y.S.2d 611; *Gallagher v. Delancy*, 139 F.3d 338 (2d Cir); *Johnson v Palma*, 931 F2d 203 (2d Cir).

### F.  Damages – Generally

I am about to instruct you as to the proper measure of the damages that you will be considering. The fact that I am giving you these instructions is not an indication of my view as to which party you should find for in the case or whether any damages are appropriate at all.

Instructions as to the measure of damages are given only for your guidance in the event that you should find in favor of Plaintiff in accordance with the other instructions that I have given you.

Thus, if you find that Mr. Anderson has satisfied his burden of proving by a preponderance of the evidence that Defendant discriminated against him, only then may you consider the issue of what damages Defendant should pay Plaintiff. On the other hand, if you decide that Mr. Anderson is not entitled to prevail on his claims, you need go no further.

Authority: 4 Modern Federal Jury Instructions, Inst. 77-01 (2007), as modified; O'Malley, Vol. 3C § 74.02, § 171.90, as modified; 42 U.S.C. Section 2000-5(e); N.Y.C. Admin. Code § 8-502(d).

**G.  <u>Damages Must Be Reasonable and Not Speculative</u>**

The burden of proof to show that damages were sustained is on Mr. Anderson. Plaintiff must prove the nature, extent, duration and consequences of the damages he sustained by a preponderance of the evidence. You may not speculate, guess, or infer damages. Damages must be reasonable and based upon the evidence before you. You are not to award to Plaintiff speculative damages; that is, compensation for damages that, although possible, are remote, conjectural or speculative.

If you should find that Plaintiff is entitled to a verdict on one or more of her claims, you may award Plaintiff only such sums as will reasonably compensate his for the damage you find he has sustained as a direct cause of Defendant's actions or inaction.


Authority: *Rojas v. Manhattan Jeep Eagle*, No. 97-9009, 1998 U.S. App. LEXIS 12677, at *2 (2d Cir. Apr. 20, 1998); *Whittlesev v. Union Carbide Corp.*, 742 F.2d 724, 729 (2d Cir. 1994); *Dunlap-McCuller v. Riese Org.*, 980 F.2d 153, 159 (2d Cir. 1992)

**H.  Damages Based on Evidence - All Claims**

If you find Defendants discriminated against Mr. Anderson based on his status as an African-American male, then you must determine an amount that is fair compensation for his damages.  Additionally, if you find Defendants retaliated against Mr. Anderson, then you must determine an amount that is fair compensation for his damages.

## I.  <u>Emotional Distress</u>

In additional to actual damages, Plaintiff here is seeking mental anguish damages. You may award such compensatory damages only for injuries plaintiff proves were caused by Defendants' allegedly wrongful conduct. The damages that you award must be fair compensation -- no more and no less.

You may award damages for any pain, suffering or mental anguish that plaintiff experienced as a consequence of defendant's allegedly unlawful act. No evidence of the monetary value of such intangible things as pain and suffering has been, or need be, introduced into evidence.

There is no exact standard for fixing the compensation to be awarded for these elements of damage. Any award you make should be fair in light of the evidence presented at the trial.

In determining the amount of any damages you decide to award, you should be guided by common sense. You must use sound judgment in fixing an award of damages, drawing reasonable inferences from the facts in evidence. You may not award damages based on sympathy, speculation, or guesswork. On the other hand, the law does not require that plaintiff prove the amount of plaintiff's losses with mathematical precision, but only with as much definiteness and accuracy as circumstances permit.

Authority: 3C Fed. Jury Prac. & Instr. § 171:90 (6th ed.), 3C Fed. Jury Prac. & Instr. § 171:90 (6th ed.) (without modification).

### J.   **Eggshell Plaintiff**

A wrongdoer takes his victim as he finds him. This means that if Mr. Anderson is unusually sensitive or has pre-existing psychological or financial conditions that make him more vulnerable to the ill-effects of unlawful discrimination, then the Defendants are responsible for any harm proximately caused by his unlawful discrimination. This remains true even if someone else in plaintiff's position would not have suffered as much as the plaintiff did.

Authority: *Tobin v. Steisel*, 64 N.Y.2d 254, 259 (1985); *Brady v. Wal-Mart Stores, Inc.*, 455 F.Supp.2d 157, 197 (E.D.N.Y. 2006); *Jenson v. Eveleth Taconite Co.*, 130 F.3d 1287, 1294-95 (8th Cir. 1997); *Katt v. City of New York*, 151 F. Supp. 2d 313, 351, n.31 (S.D.N.Y. 2001) (Lynch, J.); aff'd in relevant part sub nom. *Krohn v. New York City Police Dep't*, 60 F. App'x 357 (2d Cir. 2003); *Fink v. City of New York*, 129 F.Supp.2d 511, 537 (E.D.N.Y. 2001); EEOC Enforcement Guidance: Compensatory and Punitive Damages Available under § 102 of the Civil Rights Act of 1991, at 7.

### K.  Proposed Jury Instruction No. 23

Defendant is only liable for the harms caused by their discriminatory conduct. If Mr. Anderson establishes that he was harmed as a result of Defendants' unlawful discrimination, but you are unsure as to whether a particular aspect of the harm plaintiff suffered was caused by defendant's unlawful discrimination, then the burden is on the defendant to establish that it was unlikely that its discrimination caused that aspect of the harm plaintiff suffered.

Authority: *Spitz v. Lesser*, 302 N.Y. 490, 494 (1951); *McKinnon v. Kwong Wah Restaurant*, 83 F.3d 498, 506-07 (1st Cir. 1996); *Northington v. Marin*, 102 F.3d 1564, 1568 (10th Cir. 1996).

### L.  Proposed Jury Instruction No. 24

Mr. Anderson also seeks an award of punitive damages.  Punitive damages are awarded to punish a Defendant for wrongful conduct, and to deter others from engaging in similar wrongful conduct.  Punitive damages are intended to protect the community, and to be an expression of the jury's indignation at a Defendant's misconduct. In order to award Mr. Anderson punitive damages, you must first find in his favor on his claim under Title VII. Punitive damages are not available under the State Human Rights Law.  As with compensatory damages, the fact that I am instructing you on punitive damages is not any indication of my view as to what your verdict should be, or on whether punitive damages should be awarded.  It is entirely up to you to decide whether – under my instructions – punitive damages should be awarded in this case.

Mr. Anderson seeks punitive damages under Title VII.  Punitive damages may be awarded based on a violation of this statute if you find that Mr. Anderson has shown – by a preponderance of the evidence – that the Defendant engaged in intentional discrimination and acted with malice or reckless indifference to Mr. Anderson's rights under these statutes.

A defendant can be found to have acted with malice or reckless indifference to a plaintiff's rights where it knew that its conduct violated the law prohibiting discrimination or acted with reckless disregard of the law.  Direct evidence that a defendant acted with knowledge that its conduct violated the law is not required, however. Instead, the requisite state of mind may be inferred from the circumstances. Moreover, even if Mr. Anderson has not proven that the Hospital knew it was acting in violation of the law, you may infer that the Hospital acted with malice if you find that it acted egregiously or outrageously.

An employer may be held liable for punitive damages based on an employee's malicious or reckless indifference to a plaintiff's rights where (1) the employer authorized the employee's acts; (2) the employer was reckless in employing that employee; or (3) the employer ratified or approved

the employee's acts. An employer ratifies an act where it confirms an act committed by an employee. An employer may also be held liable for punitive damages based on an employee's malicious or reckless indifference to a plaintiff's rights where the employee was employed in a managerial role and was acting within the scope of his or her employment.

Authority: *Kolstad v. American Dental Ass'n*, 527 U.S. 526, 527, 538 (1999); *Brady v. Wal-Mart Stores, Inc.*, 531 F.3d 127, 137 (2d Cir. 2008); *Farias v. Instructional Sys., Inc.*, 259 F.3d 91, 101 (2d Cir. 2001); *Zimmermann v. Assocs. First Capital Corp.*, 251 F.3d 376, 385 (2d Cir. 2001).

## III. FINAL INSTRUCTIONS ON PROCEDURE

### A.      Right to See Exhibits and Hear Testimony; Communications With Court

Ladies and gentlemen of the jury, that concludes my instructions to you concerning the specific claim in this case. You will soon retire to the jury room and begin your deliberations. All of the documentary exhibits that were admitted into evidence during the trial will be sent into the jury room. If you want any of the testimony, you may request that. Please remember that it is not always easy to locate what you might want, so be as specific as you possibly can be in requesting exhibits or portions of testimony

If you want any further explanation of the law as I have explained it to you, you may also request that. As I noted earlier, however, you will each be permitted to take your copy of the instructions into the jury room.

Any communication to me should be made in writing, signed by your foreperson, include the date and time, and be given to one of the Marshals. Please make any notes as clear and precise as possible. Do not tell me or anyone else how the jury stands on any issue until after a unanimous verdict is reached.

B.        **Duty to Deliberate/Unanimous Verdict**

It is your duty as jurors to consult with one another and to deliberate with a view to reaching an agreement. Each of you must decide the case for himself or herself, but you should do so only after a consideration of the case with your fellow jurors, and you should not hesitate to change an opinion when convinced that it is erroneous. Discuss and weigh your respective opinions dispassionately, without regard to sympathy, without regard to prejudice or favor for either side, and adopt that conclusion which in your good conscience appears to be most in accordance with the truth.

Your verdict must be unanimous, but you are not bound to surrender your honest convictions concerning the effect or weight of the evidence for the mere purpose of returning a verdict or solely because of the opinion of other jurors. Each of you must make your own decision about the proper outcome of this case based on your consideration of the evidence and your discussions with your fellow jurors. No juror should surrender his or her conscientious beliefs solely for the purpose of returning a unanimous verdict.

If you are divided, do not report how the vote stands, and if you have reached a verdict do not report what it is until you are asked in open court.

C.    **<u>Verdict Form</u>**

Your verdict will be organized according to a verdict form. This form will assist you in reaching a verdict and lists the questions you must answer based on the instructions that I have given.

D.       **<u>Duties of Foreperson</u>**

Finally, I referred a moment ago to a foreperson. It is customary for Juror Number 1 to serve as the foreperson, and that is what we will do here. The foreperson doesn't have any more power or authority than any other juror, and his vote or opinion doesn't count for any more than any other juror's vote or opinion. The foreperson is merely your spokesperson to the court. He will send out any notes, and when the jury has reached a verdict, he will notify the Marshal that the jury has reached a verdict, and you will come into open court and deliver your verdict.

E.      **<u>Return of Verdict</u>**

After you have reached a verdict, your foreperson will fill in the form that has been given to you, sign and date it and advise the marshal outside your door that you are ready to return to the courtroom.

Each of you must be in agreement with the verdict that is announced in court. Once your verdict is announced by your foreperson in open court and officially recorded, it cannot ordinarily be revoked.

## IV. CONCLUSION

Members of the jury, that concludes my instructions to you. I will ask you to remain seated for a moment while I confer with the attorneys to see if there are any additional instructions that they would like me to give. The Marshal will now be sworn. Members of the jury, you may now begin your deliberations.