UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------- x
ALEXANDER ANDERSON,

                        Plaintiff,

    -against-

NEW YORK CITY HEALTH AND HOSPITALS
CORPORATION,

                        Defendant.
------------------------------------- x

MEMORANDUM DECISION
AND ORDER

16 Civ. 1051 (GBD) (KHP)

GEORGE B. DANIELS, United States District Judge:

    Plaintiff Alexander Anderson brings this action against Defendant New York City Health and Hospitals Corporation ("NYCHCC"), where he was formerly employed as a social worker. (*See generally*, Second Amended Complaint ("SAC"), ECF No. 85.) He alleges that, during his employment, Defendant NYCHCC discriminated against him on the basis of his race, color, sex, age and disability; retaliated against him for complaining about such discrimination; and subjected him to a hostile work environment. (*Id.*) After certain of Plaintiff's claims were dismissed, (*see* ECF No. 203), trial proceeded against Defendants NYCHCC and Atena Motal on Plaintiff's claims of discrimination and retaliation under Title VII of the Civil Rights Act of 1964 and the New York City Human Rights Law. On December 16, 2021, a jury returned a partial verdict in favor of NYCHCC and dismissing Motal. (ECF No. 283–1.) Specifically, the jury found for NYCHCC and Motal on Plaintiff's discrimination claims, and in favor of Motal on Plaintiff's retaliation claims. The jury deadlocked on Plaintiff's retaliation claims, both federal and city, against NYCHCC. (*Id.*)

    Before this Court is NYCHCC's post-trial motion pursuant to Federal Rule of Civil Procedure 50(b) for judgment as a matter of law with respect to Plaintiff's federal and city retaliation claims against NYCHCC. (ECF No. 282.) NYCHCC's motion is GRANTED.

1

## I. LEGAL STANDARD

Judgment as a matter of law may not properly be granted under Rule 50 unless the evidence, viewed in the light most favorable to the opposing party, is insufficient to permit a reasonable juror to find in the non-movant's favor. *Stevens v. Rite Aid Corporation*, 851 F.3d 224, 228 (2d Cir. 2017) (citation omitted). A Rule 50(b) motion for judgment as a matter of law is decided according to the same standard as a motion for summary judgment under Rule 56(f). *This Is Me, Inc. v. Taylor*, 157 F.3d 139, 142 (2d Cir. 1998). Such a motion "will be granted only if (1) there is a complete absence of probative evidence to support a verdict for the non-movant or (2) the evidence is so strongly and overwhelmingly in favor of the movant that reasonable and fair minded jurors in the exercise of impartial judgment could not arrive at a verdict against him." *Noonan v. Midland Capital Corp.*, 453 F.2d 459, 461 (2d Cir. 1972), *cert. denied*, 406 U.S. 945 (1972).

When presented with a motion for judgment as a matter of law at trial, despite any judicial misgivings about the sufficiency of the evidence to support a verdict, the preferred procedure in the interest of judicial efficiency is to allow the case to be decided by the jury in the first instance and, if the court believes the verdict reached by the jury is unsupported by the evidence at trial, the court may then grant judgment as a matter of law. *Williams v. County of Westchester*, 171 F.3d 98, 102 (2d Cir. 1999). Although in the instant case, the jury returned only a partial verdict, judgment as a matter of law has withstood scrutiny by the Second Circuit when granted following a deadlocked trial. *See Noonan*, 453 F.2d at 462–63 (affirming district court's grant of judgment as a matter of law in action that resulted in a deadlocked jury and determining that the juries' inability to reach a verdict did not mean the actual disagreement preventing a verdict was fair and reasonable based on the evidence presented at trial). Accordingly, that the jury did not reach a verdict on Plaintiff's retaliation claims against NYCHCC does not preclude granting judgment as a matter of law.

## II. NYCHCC IS ENTITLED TO JUDGMENT AS A MATTER OF LAW ON PLAINTIFF'S RETALIATION CLAIMS AGAINST NYCHCC

To establish a *prima facie* case of retaliation under Title VII, a plaintiff-employee must show that (1) he engaged in protected activity; (2) the employer was aware of this activity; (3) the employer took adverse action against the employee; and (4) a causal connection exists between the protected activity and the adverse action. *Summa v. Hofstra Univ.*, 708 F.3d 115, 125 (2d Cir. 2013). Once *prima facie* retaliation established, the burden shifts to the employer to demonstrate that a legitimate, nondiscriminatory reason existed for its action. *Raniola v. Bratton*, 243 F.3d 610, 625 (2d Cir. 2001). If the employer demonstrates a legitimate, non-discriminatory reason, then "[t]he burden shifts ... back to the plaintiff to establish ... that the employer's action was, in fact, motivated by discriminatory retaliation." *Id.* The NYCHRL is slightly more solicitous of retaliation claims than Title VII because, rather than requiring a plaintiff to show an adverse employment action, it only requires action that was "reasonably likely to deter a person from engaging in protected activity." *Mestecky v. New York City Dep't of Educ.*, 791 F. App'x 236, 239 (2d Cir. 2019). Otherwise, retaliation claims face the same requirements under the NYCHRL as under federal law. *See id.*

In his post-trial submissions, Plaintiff identifies ten adverse employment actions that he claims were taken against him by NYCHCC in retaliation after he first complained about discrimination in December 2013. Specifically, Plaintiff claims (1) that his supervisors Milly Toro and Maria Kazaki-Maher threatened him "with the loss of his promotion to Level II Social Worker" on March 27, 2014; (2) that Toro and Kazaki-Maher "stripped [him] of supervisory responsibilities" over other counselors on March 27, 2014;[1] (3) that Toro and Kazaki-Maher "[a]ccused [him] of

---

[1] This Court previously granted pretrial summary judgment to Defendants on Plaintiff's retaliation claims relating to the removal of his supervisory duties and the delay in his promotion (Acts One and Two), but only under Title VII, for his failure to establish that retaliation was the but-for cause of either action. (ECF No. 203, at 14.)

3

threatening" his coworker, Aleman on March 27, 2014; (4) that Motal and the Director of NYCHCC's Behavior Health Department, Nicole Robinson, refused to "hire [him] as the MICA supervisor" on June 26, 2014; (5) that Motal, Toro and Kazaki-Maher canceled "his promotion to Level II Social Worker" on July 25, 2014; (6) that Kazaki-Maher "[d]enied [him] clinical social work supervision" during 2014; (7) that Kazaki-Maher "[d]enied [him] vacation time" on November 26, 2014; (8) that Robinson "[t]ransferred [him] to inpatient psych" on February 19, 2015; (9) that Robinson "[d]enied [him] the opportunity to interview for a MICA supervisory position in 2015;" and (10) that NYCHCC "[f]ail[ed] [] to investigate [his] claims of discrimination in 2016." (ECF No. 278.) Because the evidence at trial showed that each of these alleged acts fail to meet at least one element of a *prima face* case of retaliation, NYCHCC's motion for judgment as a matter of law is granted.

### A. Evidence at Trial Established that Acts Five and Six Did Not Take Place

The evidence presented at trial established that certain of the alleged actions about which Plaintiff complains did not actually take place. Specifically, the evidence established that Plaintiff was, in fact, promoted to the position of Level II social worker, with backpay, once he completed counseling for a disciplinary issue. (ECF No. 283–2.) The evidence also showed that Plaintiff received the required hours of clinical supervision from Kazaki-Maher. (ECF No. 172–23, at 7.) NYCHCC is therefore entitled to judgment as a matter of law with respect to Acts Five and Six.

### B. Acts Three, Seven, and Ten Do Not Constitute Adverse Employment Actions or Acts of Dissuasion

Plaintiff's Title VII retaliation claims predicated on Acts Three, Seven, and Ten fail because these acts do not amount to adverse employment actions. A change in work conditions qualifies as an adverse employment action under Title VII only if it is "more disruptive than a mere inconvenience or an alteration of job responsibilities." *Terry v. Ashcroft*, 336 F.3d 128, 138 (2d Cir.

4

2003). Examples of such "materially adverse change[s] in the terms and conditions of employment" include "a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, [or] significantly diminished material responsibilities." *Sanders v. N.Y.C. Human Res. Admin.*, 361 F.3d 749, 755 (2d Cir. 2004). Plaintiff's claims that NYCHCC accused him of "threatening" his coworker and denied him vacation time (Acts Three and Seven, respectively) do not qualify as adverse employment actions because neither describes a "materially adverse change in the terms and conditions" of Plaintiff's employment.[2] Rather, this conduct consists of "nothing more than what a reasonable [individual] [] would consider petty slights and trivial inconveniences," *Mihalik v. Credit Agricole Cheuvreux North America, Inc.*, 715 F.3d 12, 111 (2d Cir. 2013) (quotation omitted), the likes of which are not actionable under Title VII. Nor does NYCHCC's alleged failure to investigate Plaintiff's claim of discrimination (Act Ten) rise to the level of an adverse employment action. *See e.g., Fincher v. Depository Trust & Clearing Corp.*, 604 F.3d 712, 721, 724 (2d Cir. 2010) (failure to investigate complaints of discrimination does "not by itself alter the terms and conditions of [a plaintiff's] employment[,]" and, thus, cannot constitute an adverse employment action).[3] These acts fail to survive even the NYCHRL's more solicitous standard, as the facts at trial established that they were too trivial to dissuade a reasonable person from voicing a complaint. *Mestecky*, 791 F. App'x at 239. Nor was there any evidence that the complained of

---

[2] While Plaintiff is correct that, in certain circumstances, a false claim may be retaliatory, those circumstances are not present here. Plaintiff does not claim that Toro and Kazaki-Maher fabricated his email to Aleman. Rather, he disputes only their interpretation of the email as "threatening." (*See* ECF No. 297 at 18 (setting forth arguments why email was not threatening).

[3] Plaintiff's reliance on *Fincher*, (*see* ECF No. 297, at 23), is misguided. In *dicta*, the *Fincher* Court suggested that a failure to investigate a *non-discrimination* complaint may be retaliatory if it follows a separate, protected act. *Fincher*, 604 F.3d at 722. Here, Plaintiff's failure to investigate claim is based on NYCHCC's purported refusal to look into his complaints of discrimination. In any event, as with Acts Five and Six, Plaintiff failed to show that Act Ten ever occurred. To the contrary, the facts at trial—including Plaintiff's own admission—established that NYCHCC *did* investigate Plaintiff's complaints. Plaintiff was simply unhappy with NYCHCC's findings. (*See* ECF No. 283–2; Tr. 62:1–6.)

conduct was either motivated by or related to Plaintiff's complaints of discrimination. NYCHCC is therefore entitled to judgment as a matter of law with respect to Acts Three, Seven, and Ten.

## C. NYCHCC had Legitimate, Non-Discriminatory Reasons for Acts One, Two, Four, Seven, Eight and Nine that Plaintiff Failed to Rebut

Even if Plaintiff had established a *prima facie* case of retaliation at trial, his claims would still fail because NYCHCC adduced sufficient evidence of legitimate, non-discriminatory reasons for its actions that Plaintiff failed to show were pretextual. The evidence established that Kazaki-Meyer only denied Plaintiff's request for vacation (Act Seven) because it overlapped with a day that another employee had requested to have off. (Transcript of Trial Proceedings ("Tr."), 998:20–1002:4.) Similarly, Plaintiff claims that his transfer out of the Program to Address Substance Abuse ("PASA") and into the inpatient unit (Act Eight) constitutes retaliation, but the evidence at trial showed that Plaintiff was only transferred because PASA was dissolved and the inpatient unit was suffering from "staffing problems" and its staffing became "a priority." (*See e.g.*, Tr. 73:1-12; 981:5–13.) As to Plaintiff's claim that he was denied the opportunity to interview for a position within the Mentally Ill and Chemical Abuse ("MICA") unit in 2015 (Act Nine), the trial evidence showed that Plaintiff had previously interviewed for the position twice and was deemed unqualified for it, and so NYCHCC legitimately saw no reason to allow him to interview again. (Tr. 215:12–22). With respect to Plaintiff's threatened loss of promotion (Act One), Toro and Kazaki-Maher told Plaintiff they were delaying—not canceling—his promotion because Plaintiff sent what they viewed as an inappropriately harsh email to Aleman. (Tr. 924:5–13; ECF No. 283–5.) As NYCHCC explains, Toro and Kazaki-Maher felt that Plaintiff's email demonstrated "lack of patience and leadership" that warranted delaying his promotion until he completed counseling. (ECF No. 284, at 22.) For this same non-discriminatory reason, Toro and Kazaki-Maher directed Plaintiff to stop supervising Aleman (Act Two). Finally, NYCHCC established that Plaintiff was not promoted to

MICA supervisor the first two times he applied (Act Four) because he was not qualified for that position—he did not get along with his coworkers, (888:25–892:23 (Plaintiff's testimony that he told his supervisors to "fuck off" and "fuck you")), he had insufficient relevant experience compared to other applicants (212:8–215:22), and he was flippant during the interview, (*id.*).

While a plaintiff may rebut a defendant's proffered reasons with evidence that such reasons were pretextual or also motivated, at least in part, by unlawful retaliatory animus, *see Raniola*, 243 F.3d at 625, Plaintiff here has made no such showing. The only evidence Plaintiff offers in support of his theory that he was subject to retaliatory animus is his subjective belief, which is wholly speculative. NYCHCC is therefore entitled to judgment as a matter of law with respect to Acts One, Two, Four, Seven, Eight, and Nine.

### III. CONCLUSION

NYCHCC's motion for judgment as a matter of law with respect to Plaintiff's retaliation claims under Title VII and the NYCHRL, (ECF No. 282), is GRANTED.[4] Plaintiff's request for a new trial, (ECF No. 278), is DENIED.

The Clerk of Court is directed to close the open motions and to close this action.

Dated: March 20, 2023
       New York, New York

SO ORDERED.

*George B. Daniels*
GEORGE B. DANIELS
United States District Judge

---

[4] Defendant's request to call Yvette Villanueva as a witness at a second trial, (ECF No. 284, at 25), is DENIED as moot.